UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GREGORY STIEGLER,<br><br>                    Petitioner,<br>v.<br><br>WARDEN NEVEN, et al.,<br><br>                    Respondents. | Case No. 2:14-cv-01274-APG-DJA<br><br>**ORDER**<br><br>(ECF No. 50) |

Petitioner Gregory Stiegler, a *pro se* Nevada state prisoner, has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 36.  The respondents have moved to dismiss part of the amended petition. ECF No. 50.  For the reasons discussed below, I grant the motion in part.

**I.    PROCEDURAL HISTORY**

    **A.    State Criminal Proceedings**

Stiegler challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County, Nevada. *State of Nevada v. Stiegler*, Case No. 03C189278.  A jury found him guilty of second-degree murder with the use of a deadly weapon. Ex. 39, ECF No. 12-3.  The state court entered a judgment of conviction on October 6, 2005, sentencing Stiegler to 10-years-to-life for the murder charge, plus an equal, consecutive term for use of a deadly weapon. Ex. 42, ECF No. 12-6.  The Supreme Court of Nevada affirmed the conviction in January 2007. Ex. 47, ECF No. 12-11.

    **B.    First State Post-Conviction Proceedings**

On August 21, 2007, Stiegler filed a state petition for writ of habeas corpus ("first state petition") seeking post-conviction relief. Ex. 49, ECF Nos. 51-1; *see also* Ex. 49A, ECF Nos. 12-13, 12-14 (supporting memorandum).  The first state petition was denied, and he filed a post-conviction appeal. The Supreme Court of Nevada affirmed for all but two claims regarding whether trial counsel was ineffective for failing to secure experts to testify about forensic pathology and toxicology as such experts may have supported defense theories of natural causes, insufficient evidence, and self-defense. Ex. 54, ECF No. 12-19 at 23.  Post-conviction counsel

was appointed on remand. Ex. 58, ECF No. 12-23. Following an evidentiary hearing, both remanded claims were denied. Exs. 64, 69, ECF Nos. 12-29, 12-35. Stiegler appealed, solely challenging his trial counsel's failure to consult or call a toxicologist at trial. Ex. 73, ECF No. 12-39. The Supreme Court of Nevada affirmed. Ex. 76, ECF No. 12-43.

### C. Federal Habeas Proceedings

On August 4, 2014, Stiegler submitted the original federal habeas petition in this case. ECF No. 1. That petition contained three claims, with Grounds 1 and 2 stating numerous subclaims. The respondents moved to dismiss the original petition, arguing that some of his claims were unexhausted and others were procedurally defaulted. ECF No. 14. In August 2016, I granted the motion in part, finding two claims of ineffective assistance of counsel ("IAC") unexhausted and four substantive claims procedurally defaulted. ECF No. 26. Finding no cause for the default, the four substantive claims were dismissed as procedurally barred. *Id.* at 10–11. As the petition was mixed, I instructed Stiegler to notify the court how he wished to proceed. *Id.* at 11–12.

Stiegler moved to amend his petition. ECF No. 29. He requested, among other things, to add new IAC claims based on trial counsel's failure to address the substantive issues outlined in the procedurally barred claims. I granted his motion in part, allowing a total of six new IAC claims. ECF No. 32 at 7. I recognized that the new IAC claims were likely unexhausted, but the equitable exception created by *Martinez v. Ryan*, 566 U.S. 1 (2012) may apply. *Id.* I instructed Stiegler to file a single, consolidated pleading presenting all of his claims, both old and new. *Id.* at 8.

In February 2018, Stiegler simultaneously moved for a stay and abeyance to exhaust state remedies and filed his amended petition. ECF Nos. 36–37. The amendment alleges violations of his Fifth, Sixth, and Fourteenth Amendment rights to due process, a fair trial, and effective assistance of trial and appellate counsel:

> Ground 1(A): The evidence does not support a conviction for second-degree murder with use of a deadly weapon because the State failed to disprove Stiegler's claim of self-defense beyond a reasonable doubt. *Id*. at 3–6.

///

Ground 1(B): The evidence adduced by the State at trial was not legally sufficient to support Stiegler's conviction on the charge contained in the information. *Id*. at 7–12.

Ground 1(C): The prosecutor committed intentional misconduct during rebuttal argument when he disparaged defense counsel and legitimate defense tactics. *Id*. at 13–15.

Ground 1(D): The state district court committed reversible error by instructing the jury on flight as consciousness of guilt. *Id*. at 16–20.

Ground 2(E) (1)(B): Trial counsel was ineffective for failing to retain a toxicology expert to testify to the victim's cause of death. *Id*. at 21–24.

Ground 2(E) (1)(C): Trial counsel was ineffective for failing to obtain phone and bank records of the victim to prevent the State from arguing robbery as motive. *Id*. at 25–28.

Ground 2(E) (1)(D): Trial counsel was ineffective for failing to request a continuance or mistrial when the State violated a pre-trial agreement regarding the testimony of Mark Hegge. *Id*. at 29–32.

Ground 2(E) (1)(E): Trial counsel was ineffective in the use of inconsistent defenses at trial. *Id*. at 33–37.

Ground 2(E) (1)(F): Trial counsel was ineffective for failing to object to the admission of hearsay statements throughout the trial. *Id*. at 38–42.

Ground 2(E) (1)(G): Trial counsel was ineffective for failing to object to the jury instruction on flight. *Id*. at 43–45.

Ground 2(E) (1)(H): Trial counsel was ineffective for failing to object to prosecutorial misconduct in rebuttal closing argument. *Id*. at 46–48.

Ground 2(E) (1)(I): Trial counsel was ineffective for failing to ensure a proper jury panel. *Id*. at 49–52.

Ground 2(E) (1)(J): Trial counsel was ineffective for failing to adequately question/cross-examine the victim's family and prosecution witnesses on the issue of his drug and alcohol use, history of violence, and poor health. *Id*. at 53–56.

Ground 2(E) (1)(K): Trial counsel was ineffective for failing to question Jerry Honnert regarding being an informant and any deal in exchange for his testimony. *Id*. at 57–59.

Ground 2(E) (1)(L): Trial counsel was ineffective for failing to object to the testimony of Detective Ken Hardy regarding the ultimate question of guilt or innocence. *Id*. at 60–62.

Ground 2(E) (1)(M): Trial counsel was ineffective for failing to file a motion in limine or object to the use of the word "crypt" until after trial started. *Id*. at 63–65.

Ground 2(E) (1)(N): Trial counsel was ineffective for agreeing to limit the use of the victim's character evidence. *Id*. at 66–70.

Ground 2(F) (1)(A): Appellate counsel was ineffective for failing to raise issues on direct appeal as constitutional violations. *Id*. at 71–73.

Ground 2(F) (1)(B): Appellate counsel was ineffective for failing to raise the issues outlined in Grounds 2A, 2B, 2C, and 2D as well as further prosecutorial misconduct. *Id*. at 74–77.

<u>Ground 3</u>: Cumulative error at trial, on direct appeal, and in his petition. *Id*. at 78–79.

<u>Ground 4(A)</u>: Trial counsel was ineffective for failing to retain a forensic pathologist to testify regarding the cause of death. *Id*. at 80–86.

<u>Ground 4(B)</u>: Trial counsel was ineffective for failing to properly investigate the victim's manner and cause of death, and appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim regarding the deadly weapon enhancement. *Id*. at 87–90.

<u>Ground 4(C)</u>: Trial counsel was ineffective for failing to object to the reasonable doubt instruction. *Id*. at 91–95.

<u>Ground 4(D)</u>: Trial counsel was ineffective for failing to investigate and preserve for appeal misconduct of juror #3. *Id*. at 96–99.

<u>Ground 4(E)</u>: Trial counsel was ineffective for failing to investigate and preserve for appeal misconduct of juror #10. *Id*. at 100–04.

<u>Ground 4(F)</u>: Trial counsel was ineffective for not objecting to and preserving for appeal the argument that the trial court improperly allowed the State to amend the information to include a deadly weapon enhancement. *Id*. at 105–08.

ECF No. 36. I granted Stiegler's request and stayed this action pending exhaustion of his claims in Nevada courts. ECF No. 39.

### D.  Second State Post-Conviction Proceedings

In May 2018, Stiegler filed a second state petition for writ of habeas corpus in which he presented the six new IAC claims raised in the federal amended petition as Grounds 4(A), 4(B), 4(C), 4(D), 4(E), and 4(F). Ex. 79, ECF No. 51-3. The second state petition was denied as untimely and successive, and Stiegler did not establish good cause or prejudice to overcome those procedural bars. Ex. 83, ECF No. 51-7. He appealed, but the decision was affirmed in May 2019. Ex. 88, ECF No. 52-3.

### E.  Reopened Federal Habeas Proceedings

In July 2019, Stiegler's unopposed request to reopen this case was granted, and a schedule was set to complete briefing. ECF No. 42. The respondents have moved to dismiss some of the grounds. ECF No. 50.

## II.  EXHAUSTION

### A.  Reconsideration of Ground 1(D)

A district court "possesses the inherent procedural power to reconsider, rescind, or modify" an order for sufficient cause. *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d

882, 888 (9th Cir. 2001); *see also WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 (9th Cir. 2011) (citing Fed. R. Civ. P. 54(b) (an order that does not end the action as to any of the claims or parties "may be revised at any time before the entry of a judgment")). A successful motion to reconsider "must set forth some valid reason why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *United States v. Kauwe*, 467 F. Supp. 3d 940, 945 (D. Nev. 2020) (citation and internal quotation marks omitted).

In Ground 1(D), Stiegler alleges that the state court committed reversible error by instructing the jury on flight as consciousness of guilt. ECF No. 36 at 16–20. The respondents argued in their first dismissal motion that this claim was unexhausted. ECF No. 14 at 11–12. I found this claim was exhausted:

> Petitioner's opening brief to the Nevada Supreme Court cited and discussed the federal decisions in the following cases: *United States v. Feldman*, 788 F.2d 544, 555 (9th Cir. 1986); *Morris v. United States*, 325 F.2d 192 (1963);[1] and *United States v. Meyers*, 550 F.2d 1036, 1051 (5th Cir. 1977). Petitioner's claims in Ground 1(D) of the federal amended petition were properly presented and federalized in the Nevada state courts.

ECF No. 26 at 6. *See also* Opening Brief, Ex. 44, ECF No. 12-8 at 34–36.

The respondents now ask me to reconsider this finding because the three federal cases do not engage in a federal constitutional analysis. ECF No. 50 at 12–14. Rather, they contend the cases discuss only whether facts in the record supported giving the jury a flight instruction—a non-constitutional claim. Stiegler argues that the cases cited in his opening brief properly federalized Ground 1(D) because they rendered decisions on whether "a reversible error had occurred in giving an improper flight instruction," and the respondents' request should be denied under the law of the case doctrine. ECF No. 55 at 8. The respondents reply that the law of the case doctrine is not applicable because no final judgment has issued and this court still has jurisdiction over the case. ECF No. 57 at 3.

To "fairly present" a federal claim, a petitioner must have alerted the state courts to the

---

[1] Although the prior order accurately reflects the citations in Stiegler's opening brief, the correct citation for *Morris* is 326 F.2d 192 (9th Cir. 1963).

fact that he was asserting a claim under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). A properly exhausted claim "'must include reference to a specific federal constitutional guarantee'." *Woods v. Sinclair*, 764 F.3d 1109, 1129 (9th Cir. 2014) (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)). When relying on case citation for exhaustion purposes, a petitioner "must cite either federal or state case law that engages in a federal constitutional analysis." *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005).

Stiegler is correct that *Feldman*, *Morris*, and *Meyers* reviewed whether a reversible error occurred in giving an improper flight instruction. The decisions arose from appeals in federal criminal cases. Federal criminal convictions are reversed for non-constitutional as well as constitutional error. Each of these cases discussed purported trial errors under federal evidentiary standards—the Federal Rules of Evidence—that do not apply in state criminal proceedings. Upon further review of *Feldman*, *Morris*, and *Meyers*, it is apparent that none of the cases specifically refers to a defendant's rights to due process or a fair trial under the U.S. Constitution or engages in constitutional analysis. Thus, on reconsideration, I find that Stiegler's discussion of *Feldman*, *Morris*, and *Meyers* in his opening brief did not exhaust Ground 1D.

### B. Ground 3 – Cumulative Error

In Ground 3, Stiegler alleges cumulative error based upon the alleged errors at trial and on direct appeal as set forth in Grounds 1(A) through 2(F) (1B).[2] ECF No. 36 at 78–79. The respondents argue that Ground 3 is either unexhausted or procedurally defaulted because Stiegler never presented the claim to the Supreme Court of Nevada under circumstances where that court would review the merits of the claim. ECF No. 50 at 15.

Stiegler raised a cumulative error claim in his first state petition. Ex. 49A, ECF No. 12-13 at 37; ECF No. 12-14 at 4. The state court denied the claim. Ex. 52, ECF No. 12-17 at 8–9.

---

[2] The amended petition states that the cumulative error claim is based on "Ground *2A* through 2F 1B;" however, this appears to be a scrivener's error because there is no Ground "2A" in the document. ECF No. 36 at 78 (emphasis added). Instead, the amended petition raises Grounds 1(A)–(D)—claims raised on direct appeal—and then resumes at Ground 2(E) (1B). *Id.* at 3–24. Because Grounds 1(A)–(D) involve Stiegler's trial, I construe these as included in the cumulative error claim. *Id.* at 78 ("[Stiegler] is entitled to relief because of the cumulative effect of the errors *which occurred at trial* ….") (emphasis added).

Stiegler filed a notice of appeal *pro se*, Ex. 53, ECF No. 12-18, but did not file an appellate brief. As such, the appeal was submitted to the Supreme Court of Nevada on the state court record without briefing under a discretionary procedure specific to Nevada post-conviction appeals. *See* Nev. R. App. P. 34(g) ("Postconviction appeals may be submitted and decided on the record on appeal without briefing when the appellant is not represented by counsel."). The Supreme Court of Nevada did not discuss the cumulative error claim but affirmed the denial of relief as to all but two IAC claims.[3] Ex. 54, ECF No. 12-19. The case was remanded to the state court for appointment of counsel and an evidentiary hearing on the two IAC claims. *Id.*

The respondents acknowledge that the issue of cumulative error was raised in the first state petition but assert that, upon returning to the Supreme Court of Nevada following the evidentiary hearing and denial of relief, Stiegler should have realleged cumulative error to allow that court to address the claim in light of all the allegations of error. ECF No. 50 at 15–17. Because he failed to do so, the respondents contend, the cumulative error claim was never fairly presented to the Supreme Court of Nevada. *Id.*

I am not persuaded that the remand negated fair presentation of the cumulative error claim. When a state court decides a claim on the merits, the claim is exhausted regardless of whether the claim otherwise would have been exhausted absent the merits decision. *See, e.g.*, *Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015) (citing *Chambers v. McDaniel*, 549 F.3d 1191, 1195 (9th Cir. 2008)). Given that Stiegler submitted the post-conviction appeal to the Supreme Court of Nevada on the record before the state court with no appellate briefing that either expanded or limited the claims, the claims and factual allegations that were fairly presented to the state court in the first state petition were also fairly presented to the Supreme Court of Nevada. The respondents provide no authority suggesting otherwise. Accordingly,

---

[3] The Nevada Supreme Court's decision does not discuss multiple claims rejected by the state court, including the cumulative error claim. *Compare* Ex. 54, ECF No. 12-19 *with* Ex. 52, ECF No. 12-17. Regardless, such claims were implicitly rejected by the Supreme Court of Nevada. *See Johnson v. Williams*, 568 U.S. 289, 300–01 (2013) (where a state supreme court's written decision does not expressly address each of a petitioner's claims, the state supreme court implicitly rejects the claims it does not discuss, and federal courts must apply deferential review under AEDPA to such claims).

Ground 3 is exhausted.

## III. PROCEDURAL BAR

The respondents assert that Grounds 4(A), 4(B), 4(C), 4(D), 4(E), and 4(F) are procedurally barred.[4] ECF No. 50 at 17–21. In addition, they ask me to apply Nevada's procedural bars to any claim found unexhausted. *Id.* at 14–17. Because I have determined that Ground 1(D) is unexhausted, I include it in the procedural bar analysis.

### A. Grounds 4(A)–(F)

Where the state courts deny a prisoner's habeas claim on independent and adequate state law grounds, that claim is "procedurally defaulted" for purposes of federal habeas review. *Edwards v. Carpenter*, 529 U.S. 446, 454–55 (2000) (bar applies if prisoner fails to meet a "state procedural requirement"). Nevada's one-year statute of limitation for post-conviction petitions, Nev. Rev. Stat. § 34.726, and prohibition on second or successive post-conviction petitions, Nev. Rev. Stat. § 34.810(2), are independent and adequate state procedural rules as applied to non-capital cases. *E.g.*, *Williams v. Filson*, 908 F.3d 546, 580 (9th Cir. 2018); *Bargas v. Burns*, 179 F.3d 1207, 1211–14 (9th Cir. 1999). Additionally, a federal court may consider a claim procedurally defaulted where "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). When a claim is procedurally defaulted, federal review is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Grounds 4(A)–(F) are the six IAC claims that Stiegler returned to state court to litigate in his second state petition. Ex. 79, ECF No. 51-3. The state court denied the second state petition as untimely and successive under §§ 34.726 and 34.810, and found that Stiegler did not establish good cause or prejudice to overcome the procedural bars. Ex. 83, ECF No. 51-7. The Nevada

---

[4] The respondents also argue that part of Ground 4(B) and Grounds 4(C), 4(D), 4(E), and 4(F) are untimely. However, I will address these grounds in relation to procedural default. *See Cooper v. Neven*, 641 F.3d 322, 327–28 (9th Cir. 2011) (stating that when a particular issue is dispositive, a district court "need not consider alternative reasons for dismissing the petition.").

8

Court of Appeals affirmed. Ex. 88, ECF No. 52-3.  Thus, Grounds 4(A)–(F) were procedurally defaulted in Nevada's courts on state law grounds, and federal review is barred unless Stiegler can demonstrate cause and prejudice to overcome the default.

### B. Ground 1(D)

A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred under state law. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."); *Sandgathe*, 314 F.3d at 376 (same).

After litigating two state habeas petitions, the respondents assert it is clear that Ground 1(D) would be procedurally defaulted if Stiegler were to return to Nevada courts. ECF No. 50 at 14 (citing Nev. Rev. Stat. §§ 34.726, NRS 34.810).  They point out that he presented this claim in his first state petition, the state court denied relief, and the Supreme Court of Nevada affirmed. *See* Ex. 54, ECF No. 12-19.  Thus, they ask me to find Ground 1(D) procedurally defaulted and dismiss the claim.

I agree with the respondents that Ground 1(D) is now procedurally defaulted.  If Stiegler were to return to state court, Nevada's procedural rules would bar him from bringing this claim. And though the burden falls on Stiegler to prove good cause for the default and actual prejudice, he does not argue that he can show cause and prejudice or actual innocence sufficient to overcome the procedural bars.  Ground 1(D) is therefore dismissed as both unexhausted and procedurally defaulted.

### IV. CAUSE AND PREJUDICE TO OVERCOME THE DEFAULTS UNDER *MARTINEZ*

When a petitioner "procedurally defaults" a federal claim, judicial review is barred unless he or she can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 724.  To show cause, a petitioner must show that some external and objective factor impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012).  Ignorance or inadvertence does not constitute

9

cause. *See Murray v. Carrier*, 477 U.S. 478, 486–87 (1986). To show prejudice, a petitioner must show not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire proceeding with constitutional error. *Id.* at 494; *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019).

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman*, 501 U.S. at 754–55). However, the Supreme Court created a narrow exception to that general rule in *Martinez v. Ryan*, 566 U.S. 1 (2012). "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in the initial collateral review proceeding … and if in that proceeding there was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). But the *Martinez* exception cannot excuse defaults of substantive claims of trial-court error, appellate-level IAC claims, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16–7; *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1295 (9th Cir. 2013).

To establish cause and prejudice for a trial-level IAC claim under *Martinez*, a petitioner must show that:

> (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, and (3) the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Ramirez*, 937 F.3d at 1242 (internal quotation omitted). The first and second "cause" prongs of the *Martinez* test are derived from *Strickland v. Washington*, 466 U.S. 668 (1984).[5] *Id.* at 1241.

---

[5] The two-element *Strickland* test for IAC claims requires a petitioner to show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "any such deficiency was 'prejudicial to the defense'." *Garza v. Idaho*, 139 S. Ct. 738, 743–44 (2019) (quoting *Strickland*, 466 U.S. at 687–88, 692). The court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner bears the burden of showing "that counsel made errors so serious that

10

Notably, the court's determination of the second prong—whether there was a reasonable probability that the result of the post-conviction proceedings would be different—"is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Ramirez*, 937 F.3d at 1242 (quoting *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) ("The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different."), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir. 2015) (en banc)).  The third "prejudice" prong directs the court to assess the merits of the underlying trial-level IAC claim. *Ramirez*, 937 F.3d at 1241.  A procedural default will not be excused if the claim "is insubstantial," *i.e.*, it lacks merit or is "wholly without factual support." *Id.* (quoting *Martinez*, 566 U.S. at 14–16).  Habeas courts "'must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance' and presume that 'under the circumstances, the challenged action might be considered sound trial strategy'." *Carter v. Davis*, 946 F.3d 489, 516 (9th Cir. 2019) (quoting *Strickland*, 466 U.S. at 689).

Relying solely on *Martinez*, Stiegler argues he can show cause and prejudice to overcome the defaults of Grounds 4(A)–(F).

**A.     Ground 4(A)**

In Ground 4(A), Stiegler alleges that trial counsel was ineffective for failing to retain a forensic pathologist to testify regarding the cause of death. ECF No. 36 at 80–86.  Stiegler points out that the Supreme Court of Nevada remanded this IAC claim to the state court for an evidentiary hearing, along with the IAC claim regarding a toxicologist, and specifically instructed that post-conviction counsel be appointed to develop these claims. *See* Ex. 54, ECF No. 12-19 at 23.  According to Stiegler, a forensic pathologist may have supported defense

---

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  To establish prejudice, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  It is not enough for the petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

11

theories regarding self-defense, insufficient evidence, and death by natural causes. ECF No. 55 at 14. He argues that post-conviction counsel, Lisa Rasmussen, was ineffective because she did not hire a forensic pathologist for the evidentiary hearing and failed to pursue the issue on appeal. *Id.* He further asserts that an evidentiary hearing is necessary to probe the strategic or tactical reasons for Rasmussen's actions. *Id.* at 13–14 (asking simply, "Why?").

The respondents contend that the crux of Stiegler's argument is that Rasmussen was ineffective because she failed to present the claim on appeal, and *Martinez* does not apply to claims that post-conviction appellate counsel was ineffective. ECF No. 57 at 4–5.

*Martinez* does not excuse the default of Ground 4(A). This claim was initially found unexhausted because Stiegler did not raise it on appeal from the denial of the first state petition. ECF No. 26 at 6–7 (finding Ground 2(E)(1)(A) unexhausted). Stiegler then realleged the claim as Ground 4(A) and returned to state court to raise the claim in his second state petition, which was denied as untimely and successive, causing the default. To the extent Stiegler challenges Rasmussen's decision not to appeal the state court's denial of relief, the errors of post-conviction *appellate* counsel are outside the scope of *Martinez. See Martinez*, 566 U.S. at 16.

To the extent he asserts that Rasmussen was ineffective because she failed to hire a forensic pathologist for the evidentiary hearing,[6] his allegation is meritless and lacking factual support. The record shows that Rasmussen investigated the file of pretrial counsel, Gloria Navarro, and discovered that Navarro had consulted with a forensic pathologist.[7] Rasmussen

---

[6] There is some ambiguity in the record regarding when the forensic pathologist claim was dropped in the post-conviction proceedings. During the evidentiary hearing, Rasmussen informed the state court that Stiegler was not moving forward with the claim. Ex. 64, ECF No. 12-29 at 9 ("There are 2 [claims] that the Nevada Supreme Court remanded on .… We are not proceeding on forensic pathologists."). However, trial counsel testified on the forensic pathologists claim, *id.* at 8–17, and the judge informed the parties that he would rule on *both* remanded claims after supplemental briefing. *Id.* at 27. Rasmussen's supplement did not discuss the forensic pathologist claim, *see* Ex. 65, ECF No. 12-30. However, she provided significant edits to the State's proposed findings of facts and conclusions of law as to this claim. Ex. 69, ECF No. 12-35. The final written order expressly denied the claim. Ex. 71, ECF No. 12-37. Out of an abundance of caution, I address Stiegler's allegation that Rasmussen was ineffective because she did not hire a forensic pathologist for the evidentiary hearing.

[7] *E.g.*, Ex. 61, ECF No. 12-26 (Memo Regarding Forensic Pathologist); Ex. 73, ECF No. 12-39 ("Upon investigation after remand, it was discovered that Stiegler's pre-trial counsel had in fact

stated multiple times on the record that she was not calling the forensic pathologist to testify at the evidentiary hearing because the pathologist's testimony "favored both sides and was a mixed bag." *E.g.*, Ex. 62, ECF No. 12-27 at 4–5.[8] Based on Navarro's consultation with the forensic pathologist, which was memorialized in a memo and written report, and Rasmussen's investigation of Navarro's file, Stiegler has not overcome the strong presumption that Rasmussen's conduct fell within the wide range of reasonable professional assistance or shown a reasonable probability that the outcome of the post-conviction proceedings would have been different. Accordingly, *Martinez* is inapplicable and Stiegler does not overcome the default of Ground 4(A).

### B. Ground 4(B) part one

The first part of Ground 4(B) alleges that trial counsel was ineffective for failing to properly investigate the victim's manner and cause of death. ECF No. 36 at 87–90. Stiegler alleges that, based on expert testimony at trial, reasonable doubt existed as to the victim's actual cause and manner of death, and the evidence does not support a conviction for weapons enhancement under Nevada Revised Statutes § 193.165. *Id.* at 88. Stiegler contends that trial counsel should have investigated the cause and manner of death to move for dismissal of the weapons enhancement or request a judgment of acquittal based on the State's failure to establish a cause of death, and counsel's failure to do so constitutes ineffective assistance. *Id.*

Stiegler alleged this claim in his original petition as Ground 2(E)(1)(O), which I previously found unexhausted. ECF No. 26 at 7. Stiegler realleged the claim as part of Ground 4(B) and returned to the Nevada courts to raise it his second state petition, which was denied as untimely and successive, causing the default. Stiegler argues this claim is similar in nature and scope to Ground 4(A), and he has shown "good cause" to overcome the default because the State's case was weak given that prosecutors could not establish a cause of death with certainty.

The respondents assert that Stiegler cannot overcome the default under *Martinez* because

---

consulted with a forensic pathologist…..").

[8] *See also* Ex. 67, ECF No. 12-33 (Rasmussen stating that the consulting pathologist's report was "a mixed bag. It points out some helpful things, points out that this duct tape is an issue.").

13

the underlying IAC claim is not substantial. ECF No. 57 at 5. They contend that there are no facts supporting a claim that the opinion of the State's pathologist was wrong. *Id.* Rather, they argue the claim "only demonstrates that Stiegler's pathologist could not refute the opinion." *Id.*

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Bemore v. Chappell*, 788 F.3d 1151, 1162–63 (9th Cir. 2015) (quoting *Strickland*, 466 U.S. at 691). "'[T]he duty to investigate and prepare a defense' is flexible, but it 'is not limitless: it does not necessarily require that every conceivable witness be interviewed or that counsel must pursue every path until it bears fruit or until all conceivable hope withers'." *Clark v. Chappell*, 936 F.3d 944, 975 (9th Cir. 2019) (citation omitted). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690–91).

At the preliminary hearing and trial, the State's forensic pathologist, Dr. Rexene Worrell, testified that a combination of blunt force trauma to the head and asphyxia caused the victim's death. *E.g.*, Ex. 34, ECF No. 16-34 at 14–15, 25. Because of the state of decomposition of the body, she could not point to one or the other as the cause of death with absolute certainty and instead opined that blunt force trauma to the head and asphyxia were concurrent causes of death. *Id.* The state court record shows that pretrial counsel Navarro investigated the cause and manner of the victim's death by consulting with forensic pathologist Dr. Todd Grey in preparation for trial. Ex. 61, ECF No. 12-26. Dr. Grey informed Navarro that the victim's

> head injuries documented could possibly be sufficient to cause death (particularly in the face of drug intoxication). However, the lack of skull fractures, epidural/subdural hematoma or other signs suggesting significant intracranial injury credibly raise the possibility that asphyxia due to covering of the nose and mouth with tape played a role in the death. I cannot think of any way to prove or disprove this possibility based on the information available.

*Id.* at 11. Based on Dr. Grey's opinion, Navarro decided not to retain his expert services for trial as his testimony would undermine Stiegler's self-defense theory. Ex. 64, ECF No. 12-29 at 12–13. Jennifer Bolton later substituted in as trial counsel. *Id.* at 16. Bolton reviewed the case file,

discussed Dr. Grey's opinion with Navarro, and similarly concluded that utilizing a forensic pathologist at trial was not in Stiegler's best interests. *Id.* at 17 (testifying she received information from Navarro showing that a forensic pathologist had already "been explored" and would not be "a viable defense in terms of saying this was the absolute cause of death").

Part one of Ground 4(B) "is insubstantial" and "wholly without factual support." *See Ramirez*, 937 F.3d at 1241. The record demonstrates that Navarro and Bolton made reasonable investigations into the victim's manner and cause of death and both made strategic choices not to retain a forensic pathologist to testify at trial. Their decisions were reasonable based on the similarity of Dr. Grey's opinion to Dr. Worrell's opinion and the potential for Dr. Grey's testimony—or that of any other forensic pathologist—to undermine his self-defense theory. Because the underlying IAC claim lacks factual support there is no reasonable probability that the result of post-conviction proceedings would have been different. Accordingly, *Martinez* does not excuse the default of part one of Ground 4(B).

### C. Ground 4(B) part two

The second part of Ground 4(B) alleges that appellate counsel was ineffective for failing to raise a sufficiency of the evidence claim regarding the deadly weapon enhancement. ECF No. 36 at 87–90. Stiegler also relies on *Martinez* for this claim. However, *Martinez*'s equitable exception is limited to claims of ineffective assistance of *trial* counsel and the Supreme Court has expressly declined to expand the "narrow" exception to claims of ineffective assistance of *appellate* counsel. *Davila*, 137 S. Ct. at 2065–66. Accordingly, Stiegler cannot demonstrate cause and prejudice under *Martinez* to overcome the default of Ground 4(B).

### D. Ground 4(C)

Stiegler alleges in Ground 4(C) that trial counsel was ineffective for failing to object to the reasonable doubt instruction. ECF No. 36 at 91–95. Based on Nev. Rev. Stat. § 175.211(1), the jury was instructed as follows:

> A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding

> conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.

*Id.* at 91. The respondents contend that Ground 4(C) is not a substantial claim because the Ninth Circuit has upheld Nevada's reasonable doubt instruction. ECF No. 57 at 8 (citing *Ramirez v. Hatcher*, 136 F.3d 1209, 1213–14 (9th Cir. 1998)).

It has long been a constitutional requirement that a jury must find a person guilty beyond a reasonable doubt. *In re Winship,* 397 U.S. 358 (1970). Nevada's reasonable-doubt instruction has been the subject of much litigation, and the Ninth Circuit has found it constitutional. *Ramirez*, 136 F.3d at 1211–15. The Ninth Circuit also has held that the issue is not worthy of a certificate of appealability. *Nevius v. McDaniel*, 218 F.3d 940, 944–45 (9th Cir. 2000). Trial counsel's "[f]ailure to raise a meritless argument does not constitute ineffective assistance." *Martinez v. Ryan*, 926 F.3d 1215, 1226 (9th Cir. 2019) (internal quotation omitted); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

Because the reasonable doubt instruction given to the jury mirrored the statutory language, and the Ninth Circuit has found the statutory language constitutional, an objection by trial counsel would have been futile. As such, trial counsel did not perform deficiently in failing to challenge the reasonable doubt instruction, and Stiegler has not overcome the default of Ground 4(C) under *Martinez*.

    **E.**    **Grounds 4(D) and 4(E)**

Ground 4(D) alleges that trial counsel was ineffective for failing to investigate and preserve for appeal the misconduct of Juror 3. ECF No. 36 at 96–99. Stiegler contends that Juror 3 talked about the case at a bar, despite the court's admonitions not to talk to anyone about the case. *Id.* Ground 4(E) alleges that trial counsel was ineffective for failing to investigate and preserve for appeal the misconduct of Juror 10. *Id.* at 100–04. Stiegler asserts that Juror 10 waited until the second day of trial to reveal that Juror 10 previously worked at a title company where Stiegler's wife also worked. *Id.* He alleges that these instances of juror misconduct violated his right to an impartial jury and entitle him to a new trial.

The respondents argue that Grounds 4(D) and (E) are insubstantial under *Martinez* and

insufficient to overcome the procedural defaults. ECF No. 57 at 9. At best, they contend, Grounds 4(D) and (E) merely allege that trial counsel should have asked Jurors 3 and 10 more questions (*i.e.*, deficient performance) but do not plead facts demonstrating prejudice. *Id.* Therefore, the respondents maintain that Stiegler cannot prove a *Strickland* violation based on the facts alleged in Ground 4(D) or Ground 4(E). *Id.*

The trial transcript shows that, prior to opening statements, the trial judge canvassed Juror 3 with the parties present regarding his bar patronage the previous night. Ex. 33, ECF No. 16-33 at 4. Juror 3 admitted he told a bar patron that he was picked as a juror in a murder trial but insisted he said nothing more. *Id.* The judge gave both parties an opportunity to inquire further. *Id.* On the second day of trial, the judge canvased Juror 10 after he notified the parties that he had worked at the same company as Stiegler's wife years earlier. Ex. 34, ECF No. 16-34 at 34. Juror 10 described Stiegler's wife as a business associate, noting they had "strictly worked together," and Juror 10 agreed that he could hear the evidence and decide without letting their previous acquaintance affect him. *Id.* Defense counsel asked Juror 10 additional questions, and the inquiry ended. *Id.*

Grounds 4(D) and (E) do not meet the *Strickland* test. To prevail on his IAC claims, Stiegler must show he was prejudiced by trial counsel's performance, which necessarily requires him to show that Juror 3 or Juror 10 was biased. *See Fields v. Brown*, 503 F.3d 755, 776 (9th Cir. 2007) (defining actual and implied bias and finding that petitioner's IAC claim failed because the juror was not biased and no prejudice resulted from trial counsel's failure to question juror). No allegations in Grounds 4(D) and (E) point to actual or implied bias, and the record does not support a finding of bias. As such, Stiegler's IAC claims are insubstantial. Because Grounds 4(D) and (E) are not substantial IAC claims, they do not satisfy the *Martinez* test and he has not shown cause and prejudice to excuse the defaults.

### F.     Ground 4(F)

Ground 4(F) alleges that trial counsel was ineffective for not objecting to and preserving an argument for appeal that the state court improperly allowed prosecutors to amend the information to include a deadly weapon enhancement. ECF No. 36 at 105–08. Stiegler was

initially charged with open murder in a criminal complaint (Ex. 2, ECF No. 16-1) but the charge was later amended to murder with use of a deadly weapon by way of an information. Ex. 6, ECF No. 16-6. Stiegler asserts that the deadly weapon enhancement is unconstitutional because, under Nev. Rev. Stat. § 193.165(3), it is not a separate offense but merely provides an additional penalty for the primary offense. ECF No. 36 at 106–07. Thus, his second sentence of 10-years-to-life for the use of a deadly weapon was illegally imposed. *Id.* Stiegler argues that, because the U.S. Constitution prohibits imprisonment except for a criminal offense, trial counsel was ineffective for failing to object to the deadly weapon enhancement imposed under § 193.165. *Id.* at 107.

The respondents contend that Ground 4(F) is insubstantial because sentencing enhancements are constitutional as long as juries make findings of fact supporting the enhancement. ECF No. 57 at 9.

Ground 4(F) fails under *Martinez* because the deadly weapon enhancement imposed under § 193.165 was constitutional and the jury made the required factual findings. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Nevada law requires that a defendant's sentence be enhanced where a crime was committed with the use of a deadly weapon. *See* § 193.165. Prior to its amendment in 2007, the statute read:

> Except as otherwise provided in NRS 193.169, any person who uses a firearm or other deadly weapon or a weapon containing or capable of emitting tear gas, whether or not its possession is permitted by NRS 202.375, in the commission of a crime shall, in addition to the term of imprisonment prescribed by statute for the crime, be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime.

*Id.* Applying *Apprendi*, the statute requires an enhanced sentence so long as the state proves that a deadly weapon was used in commission of the charged crime. *See State v. Second Jud. Dist. Ct. (Pullin)*, 124 Nev. 564, 571 & n.38, 188 P.3d 1079, 1084 & n.38 (2008) (describing the requirement that "a jury must find or a defendant must admit to the fact that a deadly weapon was used in the commission of a crime" as one of § 193.165's "constitutional aspects" and

indicating that *Apprendi* applies).

Here, the verdict options offered to the jury demonstrate that use of a deadly weapon in the course of the crime was a fact subject to proof beyond a reasonable doubt. Ex. 39, ECF No. 12-3; *see also* Ex. 38, ECF No. 12-2 (jury instruction defining the term "deadly weapon"). The verdict form required the jury to select one of seven options in its deliberations, finding Stiegler: (1) guilty of first degree murder with use of a deadly weapon, (2) guilty of first degree murder, (3) guilty of second degree murder with use of a deadly weapon, (4) guilty of second degree murder, (5) guilty of voluntary manslaughter with use of a deadly weapon, (6) guilty of voluntary manslaughter, or (7) not guilty. Ex. 39, ECF No. 12-3. The jury entered a verdict of guilty of second degree murder with use of a deadly weapon. *Id.* Because the jury determined the existence of the necessary fact—use of a deadly weapon—there was no *Apprendi* violation in Stiegler's sentence. Thus, trial counsel was not ineffective for failing to object to the deadly weapon enhancement, and Stiegler has not overcome the default of Ground 4(F) under *Martinez*.

In sum, Stiegler has failed to meet his burden of showing cause and prejudice under *Martinez* to overcome the defaults of Grounds 4(A)–(F). I therefore dismiss the claims as procedurally barred.

V. **CONCLUSION**

I THEREFORE ORDER that:

1. The respondents' Motion to Dismiss **(ECF No. 50) is GRANTED IN PART**. Grounds 1(D), 4(A), 4(B), 4(C), 4(D), 4(E), and 4(F) are dismissed with prejudice as procedurally barred.

2. The respondents must file an answer to the remaining claims of the amended petition (ECF No. 36) by April 19, 2021.

3. Petitioner will have 45 days from service of the answer within which to file a reply.

Dated: February 18, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE