**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GREGORY STIEGLER,

                Petitioner,

    v.

WARDEN NEVEN[1], et al.,

                Respondents.

Case No. 2:14-cv-01274-APG-DJA

**ORDER**

(ECF No. 36)

Petitioner Gregory Stiegler, a Nevada prisoner, filed an Amended Petition for Writ of Habeas Corpus (ECF No. 36) under 28 U.S.C. § 2254.  For the reasons discussed below, I deny the Petition and a Certificate of Appealability.

**I.**     **Background[2]**

Stiegler challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County, Nevada. *State of Nevada v. Stiegler*, Case No. 03C189278.  A jury found him guilty of second-degree murder with the use of a deadly weapon in connection with Robert Wilson's death. Ex. 39, ECF No. 12-3.  The court entered a judgment of conviction on October 6, 2005 and sentenced Stiegler to 10-years-to-life for the murder charge, plus an equal, consecutive term for use of a deadly weapon. Ex. 42, ECF No. 12-6.

/ / / /

---

[1] It appears from the state corrections department's inmate locator page that Stiegler is incarcerated at the Lovelock Correctional Center ("LCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved April 2022 under identification number 88387). The department's website reflects that Tim Garrett is the warden of that facility. *See* https://doc.nv.gov/Facilities/LCC_Facility/ (retrieved April 2022).  At the end of this order, the i direct the Clerk of the Court to substitute Stiegler's current immediate physical custodian, Tim Garrett, as respondent for the prior respondent Neven under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] I make no credibility findings or factual findings regarding the truth or falsity of evidence or statements of fact in the state court.  I summarize the factual assertions solely as background to the issues presented in the case, and I do not summarize all such material.  No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by me.  Any absence of mention of a specific piece of evidence or category of evidence does not signify that I have overlooked the evidence in considering Stiegler's claim.

From August 2001 until January 2002, Stiegler lived with Robert Wilson and another roommate in an apartment. Ex. 33, ECF No. 11-35 at 8.  Around January 2002, Wilson's family became concerned because they did not hear from Wilson when he would typically call his mother regularly. *Id*. at 9.  Around then, Stiegler failed to pay rent for the apartment and eviction proceedings began. *Id*.  After Stiegler was evicted in April 2002, Wilson's body was discovered in the apartment underneath a stairwell in a cement planter that was covered with black tar, cement, cardboard boxes, and carpet. *Id*. at 10.  Wilson's body was bound together at the feet and knees, a plastic bag was over his head, and duct tape wrapped around his mouth and hands. *Id*. Wilson had 14 lacerations to his head caused by a blunt object. *Id*.

The victim's brother and sister testified at trial.  The victim's brother, James Wilson (James) testified that Wilson would call their mother on every holiday and once a week. *Id*. at 13. Wilson did not call their mother on January 1st, prompting James to begin calling Wilson daily and leaving voicemail messages. *Id*.  After James indicated in a voicemail message that he was going to call the police if he did not hear back from Wilson, he received a call from Stiegler on February 1, 2002. *Id*. at 14.  Stiegler told James that Wilson came home on January 31 with a woman, picked up clothes and paperwork, and left. *Id*.  Wilson's sister, Susan Gaynor testified that Wilson had a disability from his military service wherein he did not have full range of motion in his right arm. *Id*. at 17.  After she had called and left messages for Wilson, Stiegler left Gaynor a voicemail message stating that Wilson met a woman in a bar, packed his clothes, and moved out. *Id*. at 18.  She further testified that Wilson was a heavy drinker and drug user. *Id*. at 19.

Jerry Honnert lived in the same apartment complex as Wilson and Stiegler and testified at trial. Ex. 33, ECF No. 11-35 at 20.  Honnert was a contractor and worked on the vacant apartments in the complex. *Id*.  Honnert hired Wilson and Stiegler to assist him. *Id*. at 21.  He further testified that Stiegler would complain about Wilson, "how he more or less hated [his roommates], . . . and had to get out of there." *Id*.  After Wilson went missing, Stiegler told Honnert that Wilson moved in with a girlfriend.  Stiegler later also told Honnert that Wilson moved in with his mother. *Id*.  Honnert testified that he noticed that tools from his work, such as

plastic sheets that would be laid down before painting, duct tape, caulking, and a hacksaw were missing. *Id*.  During the same time period these work items went missing, Stiegler hurt his left wrist and Stiegler explained that he injured it popping a wheelie on a bike for his son. *Id*. at 22.  Honnert observed Stiegler throwing out items that belonged to Wilson. *Id.* at 23.  He further testified that he spent time with Wilson and that Wilson was not a violent person. *Id*. at 22.

Heidi Raser was the manager of the apartment complex where Stiegler and Wilson lived. Ex. 34, ECF No. 11-36 at 26.  She testified that when Wilson was missing, she asked Stiegler about Wilson's whereabouts and Stiegler responded that Wilson moved in with a woman. *Id*. at 28.  She testified that she observed Stiegler discarding Wilson's items. *Id*.  She further testified that Stiegler failed to pay rent so she began the eviction process. *Id*. at 29.  After being evicted, Stiegler moved out and she began the process to renovate the apartment.  The apartment was empty except for an empty bucket that had roof tar and six bags of concrete left in a closet. *Id*. at 33.  While in the process of installing new carpet, she noticed an indentation under the stairwell. *Id*. at 30.  After lifting up the carpet, she discovered layers of cardboard boxes, plastic secured by duct tape, and roof tar. *Id*.  Raser smelled an odor of "something dead" and contacted law enforcement. *Id*. at 30-31.

Philip Batchelor lived with Stiegler and Wilson. Ex. 35, ECF No. 11-37 at 72.  He testified that Wilson owned a handgun, but Batchelor never saw the handgun. *Id*. at 73.

Teresa Cheney testified at trial that she had a child with Stiegler and began speaking to him again in December 2001. Ex. 35, ECF No. 11-37 at 32.  She testified that when she saw Stiegler, he had a broken hand and he stated he broke his hand during a fight with a roommate. *Id*. at 33.  Cheney further testified that she moved into the apartment with Stiegler and her son. *Id*. at 34.  Stiegler told Cheney that Wilson moved out. *Id*. at 35.  Stiegler blocked the stairwell to prevent his son from playing in that area. *Id*. at 34.  Cheney testified that she noticed a sewer-like smell and Stiegler stated it was a broken sewer pipe that he had previously fixed, but needed to fix again. *Id*.  After being evicted from the apartment, they moved into a motel and Stiegler told Cheney he was leaving to talk to a man about a job. *Id*.  The next day, Cheney saw on the news that Stiegler was wanted for questioning. *Id*.

Mark Hegge testified at trial that he met Stiegler in the summer of 2002 in Arizona. Ex. 34, ECF No. 11-36 at 35.  Stiegler had a different hair color and identified himself as Craig Armstrong. *Id*.  Hegge hired Stiegler to assist him on a demolition job. *Id*. at 36. When Hegge asked Stiegler for a social security number, Stiegler informed him that he had a social security card problem because he was wanted in Las Vegas. *Id*.  He further testified that during another conversation, Stiegler stated that he was wanted in Las Vegas for killing someone and that it was in self-defense during a confrontation when a guy was "really angry with a gun." *Id*.  Hegge contacted the FBI because Stiegler told him that the body was buried under his floor. *Id*.  Hegge further testified that he had never seen Stiegler be violent. *Id*. at 40.

Detective Ken Hardy testified at trial as to the recovery of Wilson's body at the scene. Ex. 33, ECF No. 11-35 at 30.  He testified that there was a smell consistent with a decomposing body. *Id*.  The Las Vegas Fire Department arrived on the scene because equipment was necessary to get through the concrete and plywood that was under the cement. *Id*. at 30-31. Detective Hardy described the condition of Wilson's body, which was wrapped in layers of plastic sheets, a cloth sheet, with a plastic bag over the head. *Id*. at 31-32.  Red duct tape was wrapped around his knees and chords were wrapped around his waist and body. *Id*. at 33.  Duct tape was around the mouth as well. *Id*.

The defense recalled Detective Hardy and he testified as to Stiegler's description of the verbal altercation Stiegler had with Wilson wherein Wilson confronted Stiegler asking for money. Ex. 35, ECF No. 11-37 at 54.  Wilson poked Stiegler and Stiegler pushed Wilson off of him.  They were exchanging punches and Wilson left the room and returned with a gun. *Id*. at 55. Stiegler picked up a metal rod and hit Wilson with it. *Id*.  Stiegler blacked out and when he came to, he was standing over Wilson. *Id*. at 56.  Stiegler left the apartment with the lights on and the door unlocked because he thought the neighbors called the police. *Id*. at 58.  When Stiegler returned, Wilson's body was cold.  Stiegler described to Detective Hardy how he cleaned up the area and moved Wilson's body.  *Id*. at 58-60.

Dr. Rexene Worrell was a medical examiner who conducted an autopsy of Wilson on May 14, 2002. Ex. 34, ECF No. 11-36 at 8-9.  She testified that at the time of the procedure the

body was in an advanced state of decomposition and estimated Wilson was dead for four to five months. *Id.* at 9.  Dr. Worrell noted ligature marks at the hands and remarkable swelling of the hands, indicating that Wilson was alive at the time that his hands were bound. *Id*. at 13.  She noted that there were 14 lacerations to the head from blunt force and that the body was found with a plastic bag over the head. *Id*. at 11-13.  Dr. Worrell concluded that the cause of death was due to blunt force injuries of the head. and asphyxia was a significant contributing factor. *Id*. at 14.  She testified that if Wilson did not die from lacerations to the head, "the bag made sure that he did die," and that it was a homicide. *Id*.  On cross-examination, Dr. Worrell testified that there were no skull fractures. *Id*. at 15.  Wilson's prior medical history indicated that he had unspecified heart problems, Hepatitis C, and a history of drug and alcohol abuse. *Id*. at 16.  Dr. Worrell testified that the low levels of methamphetamine and cocaine detected were not sufficient to be the cause of death or a contributing factor. *Id*. at 23.

Maria Thomas, a senior crime scene investigator, testified at trial. Ex. 34, ECF No. 11-36 at 42.  After cataloging evidence and the autopsy, Thomas returned to the scene to gather more evidence. Ex. 35, ECF No. 11-37 at 6.  She performed a visual search for blood and found areas that tested positive for blood in the southeast bedroom. *Id*. at 7.  She testified that minimal blood was found in the area. *Id*.

Mark Robel, an FBI special agent, testified at trial. Ex. 35, ECF No. 11-37 at 21. Robel assisted in the search for Stiegler. *Id*.  He spoke to Hegge, who relayed information regarding an individual going by the name Craig who discussed murdering his roommate in Las Vegas. *Id* at 22.  In Flagstaff, Arizona, Robel showed individuals a photograph of Stiegler, who they identified as Craig and affirmed that that person was in a home. *Id*.  Robel entered the home, Stiegler was not present, and Robel searched the area around the home. *Id*. at 22-23.  Stiegler was in the woods near the home and about 30 officers and two helicopters searched for him. *Id*.  After arrest, Stiegler admitted that he was in fact Stiegler.  *Id*. at 23.  Robel interviewed Stiegler and Stiegler "was not denying the fact that he did kill Mr. Wilson.  He stated that he felt it was in self-defense." *Id*. at 24.  During the interview, Stiegler stated that Wilson confronted him in their apartment asking for money while Wilson was intoxicated. *Id*. at 25.  After physically fighting,

during which Stiegler punched Wilson several times, Wilson went to his bedroom and came back with a revolver. *Id.*  Wilson pointed the gun at him, Stiegler pushed Wilson into the corner of the room, and Stiegler grabbed a metal rod from the closet. *Id.*  At that point, Stiegler blacked out. *Id.*  Stiegler stated that he remembered standing over Wilson and that there was blood everywhere. *Id.*  Stiegler then left the apartment and when he returned Wilson's body was cold to the touch. *Id.*  Stiegler threw the metal rod and revolver in the dumpster and described how he hid Wilson's body. *Id*. at 26.  Stiegler told Robel that he left Las Vegas because his wife no longer allowed him to see his kids and because his girlfriend moved out. *Id*. at 27.

Bill Falkner, an investigator, testified at trial that calls to a credit union were made on January 11, January 16, and January 29, 2002 from a telephone number belonging to Wilson. Ex. 35, ECF No. 11-37 at 30-31.  He further testified that Stiegler received treatment for a broken hand on January 21, 2002 at University Medical Center. *Id*.  The treatment notes indicate that he injured his hand from falling off a skateboard. *Id*.

William Wilson, a police officer, testified at trial that he arrested the victim, Robert Wilson, in the summer of 2001 for domestic violence battery of his roommate at the time. Ex. 35, ECF No. 11-37 at 48.  Officer Wilson further testified that when he was placing the victim under arrest, he had to use physical force to pull him out of the apartment because the victim pulled away. *Id*.

## II.   Legal Standard

### a.   Review under the Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in *habeas corpus* cases.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b.  Standard for Evaluating an Ineffective Assistance of Counsel Claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective-assistance-of-counsel claims, requiring a petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  It is the petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for the petitioner to "show that the errors had some conceivable

effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the ineffective-assistance-of-counsel claim under *Strickland*, establishing that that court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### III.   Discussion

#### a.   Grounds 1(A) and 1(B) – insufficient evidence

In Ground 1(A), Stiegler alleges that the evidence does not support a conviction because the State failed to disprove his claim of self-defense beyond a reasonable doubt. ECF No. 36 at 3-6. He asserts that he believed Wilson was going to kill him and that his use of force was necessary and reasonable. *Id*. In Ground 1(B), Stiegler alleges that the evidence adduced at trial was not legally sufficient to support the conviction on the charge contained in the information. *Id*. at 7-12. He asserts that Dr. Worrell's testimony specifically was not legally sufficient to sustain the conviction of second-degree murder. *Id*.

On direct appeal, the Supreme Court of Nevada held:

> Our review of the record on appeal reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. [FN 1] Stiegler was charged with killing his roommate, Robert Wilson, by "blunt force trauma and/or asphyxiation," with the use of a deadly weapon, "to wit: a metal pole and/or unknown blunt object." Stiegler admitted to killing Wilson, albeit in self-defense, during the course of a fight in which he used a metal rod to hit Wilson. Stiegler, however, did not report the incident to the police, but instead wrapped a plastic sheet around Wilson's head and body, tied the hands and feet together, and placed the body in a hollow space under the floorboards of his apartment beneath a stairwell. Within days, Stiegler proceeded to pour concrete and tar over the body, and when it dried, covered the area with carpet. Stiegler disposed of the metal rod and excised the portion of the carpet where Wilson bled. After Wilson disappeared, Stiegler lied to several people, including Wilson's family, about Wilson's whereabouts. Several months later, after losing a contested eviction, Stiegler fled to Arizona and worked under an assumed name.

Dr. Rexene Worrell performed the autopsy on Wilson and testified at trial that he suffered approximately fourteen blows to the head, most of which were the back of his skull, resulting in lacerations. Dr. Worrell stated that if the blows to the head did not kill Wilson, he may have died from asphyxiation after the plastic bag was placed over his dead. [sic] Dr. Worrell also testified that the ligature marks around Wilson's wrists and the swelling of his hands indicated that Wilson was alive when his wrists were bound.

Based on the above, we conclude that a jury could reasonably infer from the evidence presented that Stiegler's actions were not consistent with self-defense and that he committed the crime beyond a reasonable doubt. [FN 2] It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, sufficient evidence supports the verdict. [FN 3] Moreover, we note that circumstantial evidence alone may sustain a conviction. [FN 4] Therefore, we concluded that the State presented sufficient evidence to support the jury's verdict.

[FN 1] *See Mason v. State*, 118 Nev. 554, 559, 51 P.3d 521, 524 (2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[FN 2] *See* NRS 200.010; NRS 200.030(2); NRS 193.165; *see also Keys v. State*, 104 Nev. 736, 738, 766 P.2d 270, 271 (1988) (the malice necessary to support a second-degree murder conviction is implied "'when all the circumstances of the killing show an abandoned and malignant heart'" (quoting NRS 200.020)).

[FN 3] *See Bolden v. State*, 97 Nev. 71, 624 P.2d 20 (1981); *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992); *see also Tabish v. State*, 119 Nev. 293, 313, 72 P.3d 584, 597 (2003) ("[W]hen conflicting or alternative theories of criminal agency are offered through the medium of competent evidence, the jury need only achieve unanimity that a criminal agency in evidence was the cause of death; the jury need not achieve unanimity on a single theory of criminal agency.")

[FN 4] *See Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003).

Ex. 47, ECF No. 12-11 at 3-5. The Supreme Court of Nevada's rejection of Stiegler's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000). Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324, n.16.

The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the record, and must defer to that resolution. *Jackson*, 433 U.S. at 326.

Detectives, multiple crime scene analysts, and a medical examiner testified as to the evidence recovered related to Wilson's death. Specifically, Dr. Worrell concluded that it was a homicide and that the cause of death was blunt force trauma to the head with asphyxiation as a significant contributing factor due to the presence of plastic around Wilson's head. Stiegler admitted to Detective Hardy and Agent Robel that he killed Wilson in self-defense, providing details regarding his confrontation with Wilson and that Wilson had a handgun during the confrontation. This was presented to the jury. Individuals, including Wilson's siblings and neighbors, testified that Stiegler told them that Wilson moved out with a woman or his mother.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of second-degree murder with use of a deadly weapon beyond a reasonable doubt. There was sufficient evidence of second-degree murder and that Stiegler did not act in self-defense. I conclude that a rational jury could have found the essential elements of the crime beyond a reasonable doubt. Stiegler is denied federal habeas relief for Grounds 1(A) and 1(B).

### b.  Ground 1(C) – prosecutorial misconduct

In Ground 1(C), Stiegler alleges that the prosecutor committed intentional misconduct during rebuttal argument when he disparaged defense counsel and legitimate defense tactics. ECF No. 36 at 13-15. In rebuttal closing argument, the prosecution stated:

> And I want to start with common sense. Because it stuns me to stand here and listen to someone tell you that the drugs killed the guy who had tape wrapped around his mouth, was bound up and had fourteen lacerations to the head. The doctor said, absolutely no way. The drugs didn't have anything to do with it.
>
> But more importantly is it stuns me that a defense attorney would put this exhibit up there and say, oh my God, he must have been alive the 16th because he called

his bank at 7:00 p.m.

Look at that.  He called his bank at 7:00 p.m. and then she tells you, he's dead on the 21st.  Well, who is calling his bank on that day?

Ask yourself who is calling the dead guy's bank?  Is he dialing the phone number?  For her to put this exhibit up here and tell you that somehow that that piece of evidence exonerates her client, but more importantly you have to ask yourself, why is it that we just heard for an hour that there are chunks of evidence missing from this case.  There are chunks of evidence.  She wants her client to benefit because he buried the body.

She wants her client to benefit because he hid the evidence.  He destroyed the evidence in the house.  She wants her client to benefit from the lying to the number of people you heard her—him lying to.  That's what she wants you to do.  And she puts it on the State, as the State didn't give it to you.

Ex. 36, ECF No. 12 at 31.  Stiegler argues that such statements constitute misconduct and were deliberately disparaging. ECF No. 36 at 14.

The Supreme Court of Nevada held:

Stiegler contends that the prosecutor committed misconduct during rebuttal closing argument by disparaging defense counsel.  We disagree.

This court has stated that "[i]t is . . . inappropriate for a prosecutor to make disparaging remarks pertaining to defense counsel's ability to carry out the required functions of an attorney."  "To determine if prejudicial prosecutorial misconduct occurred, the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to result in a denial of due process."  Additionally, "[a] prosecutor's comments should be viewed in context, and 'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'"

Initially, we note that Stiegler did not object to the prosecutor's comments.  The failure to raise an objection with the district court generally precludes appellate consideration of an issue.  This court may nevertheless address an alleged error if it was plain and affected the appellant's substantial rights.  We conclude that Stiegler cannot demonstrate that the prosecutor's comments affected his substantial rights or prejudiced him in any way amounting to reversible plain error.  In fact, the prosecutor's statements were made in direct response to assertions made by defense counsel during Stiegler's closing argument.  We further note that the jury was properly instructed only to consider as evidence the testimony of witnesses, exhibits, and facts admitted or agreed to by counsel.  The jury was also instructed that the statements, arguments, and opinions of counsel were not to be considered as evidence.  Finally, even if the remarks were inappropriate, we conclude that the State presented substantial evidence of Stiegler's guilt, and "where evidence of guilt is overwhelming, even aggravated prosecutorial misconduct may constitute harmless error."

Ex. 47, ECF No. 12-11 at 5-7 (footnotes omitted).  The Supreme Court of Nevada's rejection of Stiegler's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

11

Prosecutorial misconduct warrants federal habeas relief if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted). A defendant's constitutional right to due process of law is violated if the prosecutor's misconduct renders a trial "fundamentally unfair." *Id.* at 181–83; *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation and internal quotation marks omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).

The Supreme Court of Nevada reasonably found that the prosecution's statements were made in direct response to the defense closing argument and that the trial judge instructed the jury that statements or opinions made by counsel were not considered evidence. Further, the prosecution presented strong evidence through testimony of multiple witnesses. *See Darden*, 477 U.S. at 181–82 (analyzing a claim that the prosecutor's argument violated due process by considering the strength of the evidence against the defendant). The Supreme Court of Nevada reasonably concluded that Stiegler failed to identify disparaging statements that could have so infected his trial with unfairness as to make the resulting conviction a denial of due process. Stiegler is denied federal habeas relief for Ground 1(C).

### c.   Ground 2(E)(1)(B) – ineffective assistance re: retaining toxicology expert

In Ground 2(E)(1)(B), Stiegler alleges that trial counsel rendered ineffective assistance for failure to retain a toxicology expert to testify to the victim's cause of death. ECF No. 36 at 21-24. He asserts that Dr. Worrell was not able to testify as to the effect that drugs, poor health, and other factors played in Wilson's death. *Id.* He further asserts that a more specific cause of death would have bolstered his claim of self-defense. *Id.* In denial of Stiegler's state post-conviction appeal, the Supreme Court of Nevada held:

1
2
3

Appellant argues that counsel should have called a toxicologist to bolster appellant's claim of self-defense and to support the defense theory that the victim died of drug and alcohol use or heart malfunction.  Appellant contends that the victim was under the influence of cocaine, methamphetamine, and alcohol at the time of his death, which would have contributed to his aggressive behavior towards appellant.

4
5
6
7
8
9
10
11

Appellant has failed to demonstrate prejudice.  Appellant confessed that he hit the victim with a metal pipe multiple times in self-defense to knock a gun out of the victim's hand.  At some point while hitting the victim, appellant "blacked out" and, when he came to, he was standing over the unconscious victim.  Appellant testified that the victim was still breathing at that point but died later, at which time appellant taped a plastic sheet around the victim's body and hid him under a stairwell.  The medical examiner testified at trial that the victim suffered 14 lacerations to the head and was found with plastic sheeting covering his face.  The medical examiner testified that she believed that the victim died from concurrent causes of blunt force head trauma and asphyxiation.  Although she could not determine whether the plastic was placed over his head before or after death, she testified that ligature marks on the victim's wrists and swelling of his hands indicated that he had been alive when he was tied up.  The medical examiner also testified that the victim had low levels of cocaine and methamphetamine in his body at the time of the autopsy, but he did not die of a drug overdose or heart attack.

12
13
14
15
16
17

At the evidentiary hearing, a toxicologist testified that the victim had ingested cocaine within 4 or 5 days of his death but that it was difficult to narrow down the time frame further because the victim's body was not discovered until four or five months after his death and was in an advance stage of decomposition.  We conclude that substantial evidence supports the district court's finding that the toxicologist's testimony would not have been helpful to bolster appellant's self-defense theory at trial, as it was inconclusive from the toxicology report whether the victim was under the influence of drugs or alcohol at the time of his death.  We also conclude that substantial evidence supports the district court's finding that the toxicologist's testimony concerning the effect of drugs on a user's health would have been irrelevant, as neither the toxicologist or medical examiner opined that the victim died of a heart attack or a drug overdose.

18
19
20
21

Ex. 76, ECF No. 12-43 at 3-6 (footnotes omitted).  The Supreme Court of Nevada's rejection of Stiegler's claim that trial counsel rendered ineffective assistance for failure to retain a toxicologist was neither contrary to nor an objectively unreasonable application of *Strickland*.

22
23
24
25
26
27
28

In order to prevail on the ineffective assistance claim, Stiegler must show his trial counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Dr. Worrell concluded that Wilson died of blunt force trauma to the head concurrent to asphyxiation.  She further concluded that the low levels of methamphetamine and cocaine detected were not sufficient to be the cause of death or a contributing factor.  The Supreme Court of Nevada also considered the testimony of the toxicologist, Dr. Kelly, who was retained on remand.  Dr. Kelly testified that

based on the drug and alcohol intake patterns of Wilson and levels found in his system, his use of

drugs would have affected his behavior on the night of his death. Ex. 65, ECF No. 12-31 at 47.

Dr. Kelley further testified, however, that the decomposition of the body over many months

affected the amount of drugs detected. *Id*. at 46.  Dr. Kelley did not conclude that Wilson died of

an overdose. *Id*. at 48.  Dr. Kelley concluded that "if direct asphyxiation of Mr. Wilson can be

ruled out, a fatal drug and exercise-induced arrhythmic episode becomes, in my opinion, the

most likely cause of death." *Id*. at 80.  Dr. Kelley's conclusion agrees at least partially with Dr.

Worrell's testimony that asphyxiation was a concurrent cause of death.  Because substantial

evidence supports the prosecution's theory and because it was inconclusive as to whether Wilson

was under the influence of drugs and the amount of drugs he ingested on the night of his death,

the Supreme Court of Nevada's determination that the toxicologist's testimony would not have

changed the outcome of the trial was not unreasonable.  Accordingly, the Supreme Court of

Nevada reasonably determined that Stiegler failed to demonstrate prejudice under *Strickland*.

Stiegler therefore is denied federal habeas relief on Ground 2(E)(1)(B).

### d.   Ground 2(E)(1)(C) – ineffective assistance re: phone and bank records

In Ground 2(E)(1)(C), Stiegler alleges that trial counsel rendered ineffective assistance

for failure to obtain phone and bank records of the victim to prevent the State from arguing

robbery as a motive. ECF No. 36 at 25-28.  He asserts that trial counsel failed to present the

argument that there was no evidence that money was withdrawn from Wilson's account. *Id*.  The

prosecution introduced evidence of phone and bank records showing calls to Wilson's bank were

made in mid-January to the end of January, but Wilson's family had not spoken to him since

January 1, 2002. ECF No. 11-35 at 13, 17-18.

The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to obtain bank and
> phone records of the victim.  Appellant claimed that these records were necessary
> to rebut the State's contention that the murder was committed in order to rob the
> victim.   Appellant failed to demonstrate that trial counsel's performance was
> deficient or that he was prejudiced.  Appellant failed to explain how the bank and
> phone records could have been used to rebut the claims of the State. *Hargrove*, 100
> Nev. at 502, 686 P.2d at 225.  Moreover, trial counsel had copies of the bank and
> phone records at trial and used them to attempt to demonstrate that the victim died
> on the January 18, 2002, and not around January 1, 2002, as the State claimed. [FN

4]  Appellant failed to demonstrate a reasonable probability of a different outcome at trial, and therefore, the district court did not err in denying this claim.

[FN 4] The timing was important to the defense theory because it was undisputed that the victim got paid at the beginning of the month and always ran out of money by the middle or the end of the month. If the victim had died later in the month, then robbery would have been a less likely motive.

Ex. 54, ECF No. 12-19 at 11-12.  The Supreme Court of Nevada's rejection of Stiegler's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The court's determination that Stiegler failed to demonstrate that his counsel was deficient was not an unreasonable application of the performance prong of *Strickland*.  Counsel argued at trial that Wilson called his banks in mid-January because he typically ran out of money in the middle to the end of the month. ECF No. 12 at 29.  In support of the defense theory, defense counsel highlighted that during their altercation Wilson asked Stiegler for money, that Stiegler sought medical treatment for his hand on January 21, and that Stiegler told Detective Hardy that the fight occurred a few days before. *Id*. at 28-29.  Defense counsel rebutted the prosecution's argument regarding motive by arguing that Wilson's death did not occur until mid to late January.  Accordingly, Stiegler's claim is belied by the record.

In order to prevail on the ineffective assistance claim, Stiegler must show his trial counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  However, the court need not "address both components of the inquiry" if the petitioner "makes an insufficient showing on one." *Id*. at 697.  Although the Supreme Court of Nevada held Stiegler failed to demonstrate both deficiency and resulting prejudice, Stiegler has not sufficiently demonstrated here his counsel's "representation fell below an objective standard of reasonableness." *Id.* Therefore, the *Strickland* inquiry need not continue.  Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(C).

/ / / /

/ / / /

### e. Ground 2(E)(1)(D) – ineffective assistance re: failure to request trial continuance

In Ground 2(E)(1)(D), Stiegler alleges that trial counsel rendered ineffective assistance for failure to request a continuance or mistrial when the State violated a pre-trial agreement regarding the testimony of Mark Hegge. ECF No. 36 at 29-32.  In a pre-trial hearing, the State filed a motion requesting that the trial judge prohibit the defendant from introducing hearsay statements regarding self-defense. Ex. 24, ECF No. 11-26 at 4.  The State explained it intended to elicit testimony from Hegge Stiegler said he was wanted for murder, to establish flight. *Id*. The State explained it did not intend to elicit their further discussions wherein Stiegler stated it was in self-defense or the details of the underlying facts. *Id*.

The State later learned that Stiegler mentioned self-defense in his first conversation with Hegge. Ex. 34, ECF No. 11-36 at 4.  Defense counsel argued that introduction of such statement opens a completely different theory of the case and requested that the trial judge issue a limiting instruction. *Id*. at 4-5.  The judge found that defense would be entitled to a continuance and that Stiegler's statements regarding self-defense would be introduced. *Id*. at 5.

Stiegler asserts that defense counsel did not avail itself of the continuance, did not object, did not request a mistrial, and did not request a limiting instruction. ECF No. 36 at 31.  The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to request a mistrial or a continuance when the State breached a pre-trial ruling regarding witness Mark Hegge.  Prior to trial, the State informed the court that it was only going to ask Hegge about the first conversation he had with appellant.  In this conversation, appellant stated to Hegge that appellant left Las Vegas because there was a warrant for his arrest on a murder charge.  The State told the district court that it was not going to elicit information from subsequent conversations, including a conversation where appellant told Hegge that he killed the victim in self defense.  It appears that trial counsel did not intend to present self-defense as a possible theory of defense in this case and therefore did not want the self-defense conversation to be introduced.  The district court agreed with the State's limited questioning, but warned the State that if it elicited information about the self-defense conversation all evidence regarding self-defense would come in.  On the second day of trial, the State informed the district court that Hegge had changed his story and was now going to testify that appellant told him about self-defense in the first conversation. Appellant claimed that, at this point, trial counsel should have requested a mistrial or a continuance because the State had breached its pre-trial agreement.
>
> Appellant failed to demonstrate that trial counsel's performance was deficient.  Contrary to appellant's claim, trial counsel did request a continuance.  Instead of granting the continuance, the district court reminded trial counsel that there was not

going to be any court the following day, implying that trial counsel had additional time to prepare. Further, the district court ordered the State to make Hegge available to the defense. No grounds existed for trial counsel to ask for a mistrial as the State did not breach the agreement. Rather, appellant was granted the relief agreed to by the parties, namely that he was allowed to present testimony regarding self-defense from Hegge. In addition, appellant presented testimony regarding self-defense from Agent Robel, and Detective Hardy. Therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 11-12.

The Supreme Court of Nevada's rejection of Stiegler's claim was not contrary to nor an objectively unreasonable application of *Strickland*. Stiegler failed to establish that counsel's representation here fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 691. Trial counsel requested a limiting instruction, and the trial judge denied the request. The judge granted a short continuance and determined, as set forth in the pre-trial hearing, that because the State elicited testimony regarding self-defense, all evidence regarding self-defense would be permitted. Further, Stiegler failed to establish that there was a reasonable basis for trial counsel to move for mistrial. Accordingly, the Supreme Court of Nevada's determination that Stiegler failed to demonstrate trial counsel's performance was deficient was not unreasonable. Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(D).

### f.   Grounds 2(E)(1)(E) – ineffective assistance re: inconsistent defenses at trial

In Ground 2(E)(1)(E), Stiegler alleges that trial counsel rendered ineffective assistance for the use of inconsistent defenses at trial. ECF No. 36 at 33-37. He asserts that defense counsel's multi-prong approach of arguing insufficient evidence, self-defense, and that Wilson died a "natural death" due to his medical conditions or drug use misled the jury. *Id*.

The Supreme Court of Nevada held:

Appellant claimed that trial counsel was ineffective because he presented inconsistent defenses and that these inconsistent defenses caused the jury to be misled and feel lied to. Appellant claimed that trial counsel presented three different and inconsistent defenses: insufficient evidence, natural causes, and self-defense.

First, trial counsel argued at trial that the State presented insufficient evidence that the victim was murdered. Trial counsel argued that the medical examiner was not certain that the victim died either from blunt force trauma or asphyxiation even though those were the causes of death listed on the autopsy report. According to the autopsy report, the victim suffered 14 lacerations to the head but there were no

skull fractures. Because there were no skull fractures, the medical examiner testified that she did not believe that the victim died of blunt force trauma. Further, the medical examiner testified that she believed that the victim probably died of asphyxiation, however, the medical examiner testified that she could not determine whether the plastic sheeting was placed over the victim's head before or after death. Based on the uncertainty in the cause of death, trial counsel argued at trial that the State failed to meet its burden that the victim was murdered.

Second, trial counsel argued at trial that the victim may have died of natural causes. Because the cause of death was uncertain, trial counsel argued that the victim may have died because he suffered from hepatitis C and heart problems. Trial counsel argued that either condition, alone or in conjunction, may have killed the victim. He also argued that the victim may have died of a drug overdose because the victim was a known heavy abuser of drugs.

Finally, trial counsel argued at trial that the victim may have been killed in self-defense. Appellant confessed several times to different people that he hit the victim with a metal pipe multiple times but that he did it in self defense. Appellant claimed that the victim came into appellant's room with a gun and pointed it at appellant. Appellant claimed that to get the gun out of the victim's hand, he hit the victim, appellant "blacked out" and when he came to, the victim was unconscious, and the gun was next to the victim on the floor.

Appellant failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced in presenting the three theories described above. Given the medical examiner's testimony, that the cause of death was not clear, it was not unreasonable to argue that the State failed to present sufficient evidence to prove that the victim was murdered. Further, the uncertainty as to the cause of death and the condition of the body at autopsy, allowed trial counsel ample room to argue that the victim died of hepatitis C, heart disease, a drug overdose, or any combination of the three. Finally, it was not unreasonable to argue that, if the jury found that the victim died because of the blunt force trauma to the head or asphyxiation, the injuries were inflicted in self defense based on appellant's story. Appellant continually confessed that he hit the victim in self-defense and that the victim died sometime thereafter. Appellant failed to demonstrate a reasonable probability of a different outcome had trial counsel not present[ed] all three theories of defense. Therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 11-12.

The Supreme Court of Nevada's determination that Stiegler failed to demonstrate that his counsel was deficient was not an unreasonable application of the prejudice prong of *Strickland*. As noted by that court, it was not unreasonable for trial counsel to argue lack of sufficient evidence based on the medical examiner's testimony, which in turn supported further argument that Wilson could have died from his medical conditions or known heavy drug use. In addition, trial counsel's argument regarding self-defense was reasonable considering Stiegler's admissions to Detective Hardy and Agent Robel that he acted in self-defense, as well as Stiegler's actions of hiding Wilson's body and lying to Wilson's family regarding Wilson's whereabouts. Stiegler

failed to demonstrate that, but for counsel's presentation of multiple theories of defense, there was a reasonable probability that the outcome of the trial would have been different.  Stiegler failed to show that defense counsel's attack of the medical examiner's conclusion as to Wilson's cause of death and introduction of evidence to support Stiegler's admission regarding self-defense misled the jury.  Accordingly, the Supreme Court of Nevada reasonably determined that Petitioner failed to demonstrate prejudice under *Strickland*.  Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(E).

### g.  Ground 2(E)(1)(F) – ineffective assistance re: failure to object to hearsay statements

In Ground 2(E)(1)(F), Stiegler alleges that trial counsel rendered ineffective assistance for failure to object to the admission of hearsay statements at trial. ECF No. 36 at 38-42.  He asserts that counsel failed to object to Agent Robel's testimony regarding Stiegler's statements to Hegge that he murdered his roommate. *Id*. at 39.  Stiegler further asserts that such statements were highly prejudicial, inadmissible, and denied him of his right of confrontation. *Id*.  He alleges that counsel failed to object to Stiegler's own statements made to law enforcement. *Id*. at 40.  He asserts that his statements were the only evidence showing the use of ligatures and a weapon and if his statements were excluded, there would only be circumstantial evidence to support such claims. *Id*.

The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to object to hearsay statements from witnesses.  Appellant failed to demonstrate that he was prejudiced.  Appellant provided only one example in support of his claim, from the testimony of Agent Robel, in which he testified about his interview with Mark Hegge. [FN 3]  In May of 2003, after the body was found, appellant left Las Vegas and went to work for Hegge in Arizona.  Agent Robel testified that Hegge told him that when appellant began working for him, appellant informed Hegge that his name was Craig and that he left Las Vegas because he was wanted for murder.  Appellant claimed that this testimony was hearsay and should not have been presented.  Appellant failed to demonstrate that he was prejudiced because he failed to demonstrate a reasonable probability of a different outcome had trial counsel objected.  Here, Agent Robel's testimony regarding Hegge's statements was hearsay, *see* NRS 51.035 and NRS 51.067; however, the error was harmless because the evidence was previously testified to by Hegge.  Hegge testified he and appellant had conversations about appellant being wanted for murder in Las Vegas and Hegge testified that he told Agent Robel about these conversations.  Thus, the challenged statements had already been admitted.  Given that Hegge had already

testified about these conversations, it was harmless error for Agent Robel to testified about his conversations with Hegge, and thus, any objection to the hearsay statement would not have had a reasonable probability of altering the outcome at trial. Therefore, the district court did not err in denying this claim.

Appellant also claimed that trial counsel was ineffective for failing to object to his own hearsay statements. He claimed that the only evidence regarding the ligatures and the weapon used during the attack was introduced through his confessions to the FBI and LVMPD. Appellant failed to demonstrate that trial counsel's performance was deficient or that he was prejudiced. Appellant's statements to law enforcement were statements of a party opponent and were not hearsay. *See* NRS 51.035(3)(a). Appellant failed to assert any grounds upon which the district [court] could have excluded these statements and failed to demonstrate a reasonable probability of a different outcome at trial. Therefore, the district court did not err in denying this claim.

> [FN 3] Appellant failed to specify other instances of witnesses testifying regarding hearsay and how the testimony might have affected the outcome of the trial. Therefore, the district court did not err in denying this claim. *See Hargrove*, 100 Nev. at 502, 686 P. 2d at 225.

Ex. 54, ECF No. 12-19 at 11-12. The Supreme Court of Nevada's rejection of Stiegler's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Here, the individual who made the out-of-court-statements at issue, Hegge, testified at trial and was available for cross-examination. *See Davis v. Washington*, 547 U.S. 813, 823-24 (2006); *Crawford v. Washington*, 541 U.S. 36 (2004) ("when the declarant is unavailable, reliability assessments of testimonial hearsay cannot survive scrutiny under the Confrontation Clause without actual confrontation"). As noted by the Supreme Court of Nevada, Stiegler failed to demonstrate prejudice because Hegge's testimony had already been admitted. Even if counsel objected to Agent Robel's testimony as hearsay, the challenged statements would have already been admitted through Hegge's own testimony. As for Stiegler's statements to law enforcement, the Supreme Court of Nevada reasonably determined that they were not hearsay as statements of a party opponent. Stiegler cannot demonstrate that but for counsel's failure to object to his statements to law enforcement, there a reasonable probability of a different outcome at trial because this objection would have failed. Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(F).

/ / / /

### h. Ground 2(E)(1)(G) – ineffective assistance re: failure to object to jury instruction

In Ground 2(E)(1)(G), Stiegler alleges that trial counsel rendered ineffective assistance for failure to object to the jury instruction regarding flight. ECF No. 36 at 43-45.  He asserts trial counsel should have objected on the basis that Stiegler did not "immediately flee" to avoid prosecution according to the State's timeline that Wilson's death occurred in December or January. *Id*. at 43.  Stiegler further asserts that the flight instruction demonstrated consciousness of guilt and trial counsel's failure to object lessened the prosecution's burden. *Id*. at 43-44.

The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to object to the jury instruction on flight.    Appellant failed to demonstrate that trial counsel's performance was deficient.    A flight instruction is properly given when it is supported by the evidence. *Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 126 (2005).  Flight is more than a "'mere going away,'" the flight must demonstrate a "'going away with a consciousness of guilt,'" such as for the purpose of avoiding arrest. *Id*. at 582, 119 P.3d at 126 (quoting *State v. Rothrock*, 45 Nev. 214, 229, 200 P. 525, 529 (1921).

> Our review of the record reveals that the State provided supporting evidence of flight and, therefore, trial counsel was not deficient for failing to object to the instruction.  The victim died sometime in January or February of 2002 and was buried under the floorboards of the apartment appellant lived in.  Appellant was evicted in late April of 2002.  When the victim's body was found on May 13, 2002, appellant left Las Vegas and went to Arizona where he dyed his hair and called himself Craig.  In addition, appellant told Hegge that he left Las Vegas because he was wanted for his roommate's murder.  Therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 15-16.

The court's rejection of Stiegler's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.  Trial counsel did not have a reasonable basis to object to the use of the flight instruction because it was properly supported by evidence that Stiegler left Las Vegas after he was evicted from the apartment where he hid Wilson's body, that he dyed his hair and assumed another name, and told Hegge he was wanted for murder in Las Vegas.  Accordingly, Stiegler failed to demonstrate that an objection to the flight instruction would have been meritorious, and that trial counsel was deficient under *Strickland*.  Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(G).

### i. Ground 2(E)(1)(H) – ineffective assistance re: failure to object to prosecutorial misconduct

In Ground 2(E)(1)(H), Stiegler alleges that trial counsel rendered ineffective assistance for failure to object to prosecutorial misconduct in rebuttal closing argument. ECF No. 36 at 46-48.  He asserts that prosecution's statements in closing rebuttal argument as discussed in Ground 1(C) and the statement, "[t]hey say we haven't presented a single shred of first-degree murder. And I notice [trial counsel] over here smiling," constitute disparaging statements and misconduct.  The Supreme Court of Nevada held:

> Appellant failed to demonstrate that he was prejudiced.  On direct appeal this court concluded that the statements made by the State were made in direct response to assertions made by appellant's trial counsel and were not disparaging.  Further, this court determined that the jury was instructed to only consider as evidence the testimony of witnesses, exhibits, and facts admitted or agreed to by counsel and that the statements, arguments, and opinions of counsel were not to be considered as evidence.  Because the underlying claims have already been determined to lack merit, appellant cannot demonstrate a reasonable probability of a different outcome at trial had counsel objected to the statements.  Therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 16-17.

The determination that Stiegler failed to demonstrate that his counsel was deficient was not an unreasonable application of the prejudice prong of *Strickland*.  Further, on direct appeal, the Supreme Court of Nevada reasonably found that the prosecution's statements were made in direct response to closing argument and that the state district court instructed the jury that statements or opinions made by counsel were not considered evidence.  The prosecution's statements did not rise to the level of prosecutorial misconduct as determined by the Supreme Court of Nevada.  Further, in light of the substantial evidence that Stiegler committed the charges as well as the jury verdict for second-degree murder, as opposed to first-degree murder, Stiegler failed to demonstrate that, but for counsel's failure to object to the State's alleged disparaging statements, there was a reasonable probability that the outcome at trial would have been different.  Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(H).

### j. Ground 2(E)(1)(I) – ineffective assistance re: failure to ensure proper jury panel

In Ground 2(E)(1)(I), Stiegler alleges that trial counsel rendered ineffective assistance for

failure to ensure a proper jury panel. ECF No. 36 at 49-52.  He asserts that trial counsel failed to

properly voir dire instances of juror misconduct and failed to object or request replacement of

two jurors. *Id.*  First, he asserts that Juror No. 3 violated his oath not to discuss the case. Second,

he asserts that Juror No. 10 should have been excused because he failed to disclose that he had

previously worked with Stiegler's wife. *Id.*  The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to request that Juror 3 be removed from the jury panel because he violated his oath by talking about the case prior to it being resolved.  Juror 3, after being chosen for the jury but prior to any testimony being taken, was at a bar and told his companion that he had been chosen for a murder trial.  The district court, trial counsel, and the State questioned him and determined that he did not discuss anything about the case except that it was a murder case.  The district court admonished the juror and reminded him that he was not to discuss the case with anyone but allowed the juror to remain on the jury.
>
> In order to demonstrate that he was prejudiced by trial counsel's performance, appellant must establish that his claim was meritorious and that there was a reasonable likelihood that had trial counsel challenged the juror for cause, the challenge would have been successful. *See Kirksey v. State*, 112 Nev. 980, 990, 923 P.2d 1102, 1109 (1996) (recognizing that to demonstrate prejudice for the failure to file a motion to suppress, the petitioner must demonstrate that the motion would have been successful.).  Appellant failed to demonstrate that had trial counsel challenged the juror for cause, the challenge would have been successful because appellant failed to demonstrate that misconduct occurred and that the misconduct prejudiced appellant. *See Meyer*, 119 Nev. 554, 80 P.3d 447 (2003).  To show prejudice, appellant must prove that "there is a reasonable probability of likelihood that the juror misconduct affected the verdict." *Id.* at 564, 80 P.3d at 455.  The conduct of Juror 3 occurred prior to opening statements and the conduct was not serious enough to affect the verdict because the juror merely stated that he was chosen for a murder trial.  Appellant failed to allege how this conduct affected the jury's verdict.  Therefore, the district court did not err in denying this claim.
>
> Appellant also claimed that trial counsel was ineffective for failing to request that Juror 10 be removed from the jury panel.  Appellant claimed that trial counsel should have requested Juror 10's removal because Juror 10 failed to disclose that he previously had a business relationship with appellant's wife, and appellant's wife was one of the potential witnesses.  He informed the district court that he worked with appellant's wife in 2000, five years previously, and that they were only business associates.  After questioning from the district court, trial counsel, and the State, he informed the district court that nothing in their business relationship would prejudice him one way or another as to the testimony she would give and that it would not affect his opinion as to her credibility.
>
> Appellant failed to demonstrate that he was prejudiced.  Under the standard stated above, appellant failed to demonstrate that had trial counsel challenged Juror 10 for cause, the challenge would have been successful. *See Meyer*, 119 Nev. 554, 80 P.3d 447.  Appellant failed to demonstrate that Juror 10's conduct affected the jury's verdict because appellant's wife did not testify at trial and Juror 10 stated that he could be impartial.  Therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 15-16.  The Supreme Court of Nevada's rejection of Stiegler's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

### i.      Juror No. 3

After jury selection and prior to testimony being presented, Juror No. 3 was at a bar and disclosed that he was picked to be a member of a jury for a murder trial. Ex. 33, ECF No. 11-35 at 4.  The trial judge questioned Juror No. 3 and Juror No. 3 responded that he did not describe any details of the case, but had only stated that it was a murder trial.  *Id*.  The trial judge gave counsel an opportunity to ask questions. *Id*.

Criminal defendants have a constitutional right under the Sixth and Fourteenth Amendments to a trial by fair, impartial jurors. *Duncan v. Louisiana,* 391 U.S. 145, 148–49 (1968); *Irvin v. Dowd,* 366 U.S. 717, 721–22 (1961).  Not every incident of juror misconduct requires a new trial. *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.1974).  Rather, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id.*

Keeping in mind the deferential standard set forth in *Strickland*, and the "high level of deference given to counsel's decisions," *Carrera v. Ayers*, 670 F.3d 938, 948 (9th Cir. 2011), *on reh'g en banc*, 699 F.3d 1104 (9th Cir. 2012 ), the Supreme Court of Nevada's determination that trial counsel was not deficient for failing to challenge the juror's alleged misconduct was a reasonable application of clearly established federal law.  There is no evidence suggesting that the juror's conduct affected the verdict or that the juror was not impartial.  Even assuming deficient conduct, as noted by the Supreme Court of Nevada, Stiegler cannot establish the "prejudice" prong of the *Strickland* test.  Trial counsel did not have a reasonable basis to claim juror misconduct rising to the level of denying Stiegler a fair trial, and Stiegler failed to establish that a challenge for cause would have been successful.  Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(I) as it relates to Juror No. 3.

### ii.      Juror No. 10

Juror No. 10 informed the trial judge that he was a former business associate of Sheila

Stiegler, the wife of the defendant. Ex. 34, ECF No. 11-36 at 34.  Upon questioning, Juror No. 10 indicated that he could hear the evidence in the case without letting his previous relationship affect him. *Id.*  Juror No. 10 and Sheila Stiegler worked at the same company in the year 2000. *Id.*  Juror No. 10 indicated that there were no instances that occurred during their work relationship that would prejudice him towards her testimony or that would cause him to form an opinion as to her credibility. *Id.*  Sheila Stiegler was not called as a witness to testify at trial. Ex. 35, ECF No. 11-37 at 4.

As for juror bias, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984); *see also United States v. Edmond,* 43 F.3d 472, 473 (9th Cir.1994).  The Supreme Court of Nevada's rejection of this claim was not unreasonable.  Stiegler cannot establish the prejudice prong of *Strickland* because he failed to show that trial counsel could have successfully challenged or objected to Juror No. 10.  There was no showing that Juror No. 10 had a relationship with Sheila Stiegler that would prejudice the juror against the defense and, nonetheless, Shiela Stiegler did not testify at trial.  Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(I) as it relates to Juror No. 10.

### k.  Ground 2(E)(1)(J) – ineffective assistance re: failure to adequately question witnesses on the issue of drug and alcohol use

In Ground 2(E)(1)(J), Stiegler alleges that trial counsel rendered ineffective assistance by failing to adequately question or cross-examine Wilson's family and prosecution witnesses on the issue of his drug and alcohol use, history of violence, and poor health. ECF No. 36 at 53-56. He asserts that trial counsel did not ask enough questions to Wilson's family to establish useful evidence. *Id.*  He further asserts that trial counsel did not use medical records that were obtained pretrial. *Id.*

The Supreme Court of Nevada held:

Appellant claimed that trial counsel was ineffective for failing to adequately cross-examine the victim's family, Detective Hardy, and the medical examiner. Appellant claimed that trial counsel should have cross-examined them more

extensively about the victim's medical history and drug use and should have utilized the medical records of the victim.

Appellant failed to demonstrate that counsel's performance was deficient or that he was prejudiced. The victim's sister, Detective Hardy, and the medical examiner testified that they knew the victim had hepatitis C, heart problems, and used drugs. [FN 2] In addition, drugs were found in the victim's system during the autopsy and subsequent toxicology tests. The victim's medical history and drug use were not disputed at trial. Appellant did not identify anything in the victim's medical records that should have been presented but was not. Appellant failed to demonstrate a reasonable probability of a different outcome had trial counsel cross-examined these witnesses more extensively. Therefore, the district court did not err in denying this claim.

> [FN 2] To the extent that appellant claimed that trial counsel should have cross-examined the victim's brother regarding the victim's medical history and drug use, this evidence was presented through several other witnesses and appellant failed to demonstrate that he was prejudiced because the victim's brother's testimony on these issues would have been cumulative.

Ex. 54, ECF No. 12-19 at 15-16.

The Supreme Court of Nevada's rejection of Stiegler's claim was not contrary to nor an objectively unreasonable application of *Strickland*. Stiegler's assertion that trial counsel failed to question or cross-examine witnesses regarding drug and alcohol use and his poor health is belied by the record. Stiegler's sister testified that Wilson was a heavy drinker and drug user. Ex. 33, ECF No. 11-35 at 19. On cross-examination, Dr. Worrell testified as to Wilson's prior medical history indicating that he had unspecified heart problems, Hepatitis C, and a history of drug and alcohol abuse. Ex. 34, ECF No. 11-36 at 15-16. Defense counsel recalled Detective Hardy and he testified as to Stiegler's description of Wilson when he was using drugs and alcohol. Ex. 35, ECF No. 11-37 at 51. Although trial counsel did not question Wilson's brother regarding such issues, Stiegler nonetheless failed to establish that trial counsel's questioning was inadequate or that trial counsel was deficient. Based on the testimony and medical records, trial counsel argued that Wilson's cause of death could be attributed to his medical conditions or known heavy drug use. The Supreme Court of Nevada reasonably found that Stiegler did not identify anything in Wilson's medical records that should have been presented and failed to demonstrate a reasonable probability of a different outcome as trial had trial counsel questioned or cross-examined witnesses more extensively. Stiegler is therefore denied federal habeas relief on Ground 2(E)(1)(J).

1

**l.   Ground 2(E)(1)(K) – ineffective assistance re: failure to question Honnert**

2        In Ground 2(E)(1)(K), Stiegler alleges trial counsel rendered ineffective assistance by

3   failing to question Jerry Honnert about being an informant and any deal in exchange for his

4   testimony. ECF No. 36 at 57-59.  He asserts that trial counsel should have explored whether

5   Honnert made a deal with prosecution in exchange for his testimony at trial. *Id*.  The Supreme

6   Court of Nevada held:

7           Appellant claimed that trial counsel was ineffective for failing to cross-examine
            Jerry Honnert about being an informant and the parameters of the deal he may have
8           made with the State.  Appellant failed to demonstrate that trial counsel's
            performance was deficient or that he was prejudiced.  Appellant did not provide
9           any evidence that Honnert was an informant or that he was offered a deal in
            exchange for his testimony.  Appellant relied solely on the fact that Honnert had an
10          outstanding warrant for his arrest on a burglary charge at the time that the victim
            was killed.  Appellant failed to support this claim with specific facts that if true
11          would have entitled him to relief. *See Hargrove v. State*, 100 Nev. 498, 502 686 P.
            2d 222, 225 (1984).  Appellant failed to demonstrate that cross-examination on any
12          of these matters would have had a reasonable probability of altering the outcome at
            trial.  Therefore, the district court did not err in denying this claim.
13

14   Ex. 54, ECF No. 12-19 at 8-9.

15        At trial, Honnert testified that his employment ended because he was extradited to

16   Arizona due to a burglary charge. Ex. 33, ECF No. 11-35 at 20.  He further testified that he

17   served time in Arizona for the burglary charge. *Id*.  On cross-examination, trial counsel

18   questioned Honnert about his "legal problems," as well as an incident where Honnert slapped

19   Stiegler. *Id*. at 23, 25-26.  The Supreme Court of Nevada's determination that Stiegler failed to

20   demonstrate prejudice as a result of his counsel's failure to question Honnert of the possibility of

21   reaching a deal in exchange for his testimony was not an unreasonable application of *Strickland*.

22   There is no indication that Honnert did in fact have a deal regarding his criminal charge in

23   another state in exchange for his testimony.  Trial counsel, therefore, had no basis to question

24   Honnert or impeach Honnert on this topic.  Stiegler failed to demonstrate that, but for counsel's

25   failure to question Honnert regarding a potential deal, there was a reasonable possibility of a

26   different outcome at trial.  Stiegler is therefore denied federal habeas relief on Ground

27   2(E)(1)(K).

28

1

**m. Ground 2(E)(1)(L) – ineffective assistance re: failure to object to Detective Hardy's testimony**

2

In Ground 2(E)(1)(L), Stiegler alleges that trial counsel rendered ineffective assistance

3

for failure to object to Detective Hardy's testimony regarding the ultimate question of guilt or

4

innocence. ECF No. 36 at 60-62.  He asserts that Detective Hardy improperly testified as to his

5

opinion related to Stiegler acting in self-defense. *Id*.  The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to object to the State's question, "Ultimately, Detective, I know that they asked you about the credibility of the story.  You don't believe that this is a case of self defense, correct?"  In the defense's case-in-chief, trial counsel called Detective Hardy to testify about appellant's confession. Appellant claimed during the confession that the victim had been killed in self defense.  Trial counsel asked Detective Hardy whether he felt that appellant was credible when he was interviewed.  Detective Hardy responded that he could not make that determination because there was no physical evidence with which to compare appellant's story.  Immediately following trial counsel's questions regarding credibility, trial counsel began asking whether specific aspects of appellant's story were similar to the story appellant had given to Agent Robel.  Detective Hardy agreed that they were similar.  On cross-examination, the State asked the allegedly objectionable question of Detective Hardy as to whether he believed this was a case of self-defense.
>
> Based upon our review of the record, appellant failed to demonstrate that he was prejudiced.  The evidence against appellant was sufficient.  Appellant confessed to two different law enforcement officers that he killed his roommate. He admitted that he tried to cover up the death by hiding the victim in the floorboards of the apartment.  Further, after the body was discovered, appellant fled Las Vegas and changed his name and hair color evidencing a consciousness of guilt.  Appellant failed to demonstrate a reasonable probability of a different outcome at trial had trial counsel objected to the question, and therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 10-11.

This determination that Stiegler failed to demonstrate that his counsel was deficient was

not an unreasonable application of the prejudice prong of *Strickland*.  As noted, there was ample

evidence at trial, including Stiegler's confession to Detective Hardy and Agent Robel, evidence

that Stiegler fled, and evidence that Stiegler hid the body in the apartment.  The Supreme Court

of Nevada's determination that Stiegler failed to demonstrate prejudice was not an unreasonable

application of *Strickland*.  Stiegler is therefore denied federal habeas relief on Ground

2(E)(1)(L).

/ / / /

1

### n. Ground 2(E)(1)(M) – ineffective assistance re: failure to file a motion in limine

2   In Ground 2(E)(1)(M), Stiegler alleges that trial counsel rendered ineffective assistance

3   for failure to file a motion in limine or object to the use of the word "crypt" until after trial

4   started. ECF No. 36 at 63-65.  He asserts that the State used the word "crypt" four times in

5   opening statements when describing the area where Stiegler put Wilson's body. *Id*.  The

6   Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for failing to file a motion in
> limine regarding the use of the word "crypt."  In the opening statement, the State
> referred to the area where the body was found as a "crypt."  Trial counsel did not
> object until he noticed that the State's demonstrative exhibit labeled the location
> where the body was found as a "crypt."  Prior to this exhibit being presented to the
> jury, trial counsel objected and the district court sustained the objection.
>
> Appellant failed to demonstrate that he was prejudiced.  The word "crypt" was only
> used during opening statements and the jury was instructed that the statements,
> arguments, and opinions of counsel were not to be considered as evidence.  Further,
> appellant failed to allege how the use of the word "crypt" was prejudicial.
> Appellant confessed to hitting the victim over the head with a pipe, dragging him
> downstairs, placing the victim in the hole in the floor, pouring concrete on the
> victim, and laying carpet over the top.  Given this evidence, appellant failed to
> demonstrate a reasonable probability of a different outcome at trial had trial counsel
> objected to the use of the word "crypt" during opening arguments.  Therefore, the
> district court did not err in denying this claim.

16   Ex. 54, ECF No. 12-19 at 5-6.  The Supreme Court of Nevada's rejection of Stiegler's claim was

17   neither contrary to nor an objectively unreasonable application of clearly established law as

18   determined by the United States Supreme Court.

19   A prosecutor's improper remarks render a conviction unconstitutional if they so infect the

20   trial with unfairness as to make the resulting conviction a denial of due process. *Darden*, 477

21   U.S. at 181.  The ultimate question is whether the alleged misconduct rendered the trial

22   fundamentally unfair. *Darden*, 477 U.S. at 183.  In determining whether a prosecutor's

23   arguments rendered a trial fundamentally unfair, a court must judge the remarks in the context of

24   the entire trial. *See Boyde v. California*, 494 U.S. 370, 385 (1990); *Darden*, 477 U.S. at 179-82.

25   Here, the determination that Stiegler failed to demonstrate that his counsel was deficient

26   was not an unreasonable application of the prejudice prong of *Strickland*.  In the context of the

27   entire trial, the State's use of the term "crypt" did not approach the threshold set in *Darden*.

28   *See Darden,* 477 U.S. at 181–82 (analyzing a claim that the prosecutor's argument violated due

process by considering the strength of the evidence against the defendant).  As such, the

Supreme Court of Nevada's determination was reasonable.  Stiegler is therefore denied federal

habeas relief on Ground 2(E)(1)(M).

### o.  Ground 2(E)(1)(N) – ineffective assistance re: agreement to limit use of character evidence

In Ground 2(E)(1)(N), Stiegler alleges that trial counsel rendered ineffective assistance

for agreeing to limit the use of the victim's character evidence. ECF No. 36 at 66-70.  Trial

counsel agreed to withdraw a request to introduce molestation charges against Wilson, and the

State agreed that domestic violence charges against Wilson were admissible at trial. *Id*.  Stiegler

asserts that trial counsel should have obtained a ruling from the trial judge as to the admissibility

of molestation charges against Wilson. *Id*.  In addition, defense counsel interviewed witness

Philip Batchelor, who provided that Wilson made a racist comment or used a racial epithet when

discussing Wilson's gun ownership. *Id*.  He asserts that trial counsel failed to adequately

investigate such character evidence or adequately prepare for trial. *Id*.

The Supreme Court of Nevada held:

> Appellant claimed that trial counsel was ineffective for agreeing to limit the scope of evidence relating to the character of the victim.  Specifically, appellant contended that trial counsel should not have agreed to exclude evidence that the victim molested young boys.  He also contended that the victim's racist comments should have been presented.

> Appellant failed to demonstrate that trial counsel's performance was deficient. Appellant failed to demonstrate that the evidence was admissible.  In order to be admissible, evidence must be relevant. NRS 48.025.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable that it would be without the evidence." NRS 48.015.  Although evidence may be relevant, "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1).

> Appellant failed to demonstrate that the molestation evidence was relevant or that the probative value substantially outweighed the danger of unfair prejudice, or that it would not cause confusion of the issues or that it would not mislead the jury. Appellant failed to demonstrate that the molestation evidence related to the crime he was charged with.  Further, according to the record, the victim may have been arrested for child molestation, but he was not prosecuted on the charges.  Because the molestation evidence did not relate to the crime, was highly inflammatory, the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury.

1
2
3
4
5
6
7
8

> Appellant also failed to demonstrate that the racist comments by the victim were relevant or that the probative value of the evidence substantially outweighed the danger of unfair prejudice, or that it would not cause confusion of the issues or that it would not mislead the jury. Appellant did not allege that racism played any role in the death of the victim nor is there any evidence in the record on appeal to support racism's role in the death. The racism evidence did not relate to the crime, was highly inflammatory and the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Further, the witness who was going to testify about the racist comments testified that he knew that the victim had a gun and had threatened to use it. [FN 1] The racist comments were therefore unnecessary. Accordingly, the district court did not err in denying this claim.
>
>     [FN 1] The racist comments were made in relation to using a gun.

9    Ex. 54, ECF No. 12-19 at 6-7.

10          The Supreme Court of Nevada's rejection of Stiegler's claim was not contrary to nor an

11   objectively unreasonable application of *Strickland*. Stiegler failed to establish that counsel's

12   representation here fell "outside the wide range of professionally competent assistance."

13   *Strickland*, 466 U.S. at 691. As noted by the Supreme Court of Nevada, Stiegler did not

14   demonstrate that the evidence was admissible as relevant. Trial counsel did not have a

15   reasonable basis to introduce molestation charges against Wilson because it was highly

16   prejudicial and Stiegler failed to demonstrate that it related to the crime. Further, trial counsel

17   did not have a basis to introduce alleged racial epithets made by Wilson because he failed to

18   show that Wilson's death was related to racism or Stiegler's theory of self-defense. Batchelor

19   nonetheless testified as to Wilson's gun ownership, but did not comment on Wilson's use of

20   racial epithets.

21          Stiegler has not demonstrated that the Supreme Court of Nevada's decision was contrary

22   to or involved an unreasonable application of clearly established federal law or resulted in a

23   decision that was based on an unreasonable determination of the facts. Stiegler is therefore

24   denied federal habeas relief on Ground 2(E)(1)(N).

25
26
          **p.  Ground 2(F)(1)(A) – ineffective assistance of appellate counsel re: failure to raise issues on direct appeal**

27          In Ground 2(F)(1)(A), Stiegler alleges that appellate counsel rendered ineffective

28   assistance for failure to raise issues on direct appeal as constitutional violations. ECF No. 36 at

71-73.  He asserts that appellate counsel raised the following claims on direct appeal: (1) lack of sufficient evidence to support a second degree murder with use of a deadly weapon conviction and disprove a self-defense claim; (2) lack of sufficient evidence to support conviction on the charge in the information; (3) prosecutorial misconduct for comments disparaging defense counsel in rebuttal argument; and (4) the state district court erred in providing a flight instruction as the evidence was insufficient. *Id*.  Stiegler asserts that appellate counsel "failed to effectively raise the claims on direct appeal in constitutional manner so as to allow Petitioner to litigate his claims beyond the Supreme Court of Nevada." *Id*. at 71.

The Supreme Court of Nevada held:

> Appellant claimed that appellate counsel was ineffective for failing to "federalize" his claims on appeal.  Appellant claimed that this precluded him from seeking relief in federal court.  Appellant failed to demonstrate that he would have gained a more favorable standard of review on direct appeal had his appellate counsel federalized the arguments. *See Browning v. State*, 120 Nev. 347, 365, 91 P.3d 39, 52 (2004). Therefore, the district court did not err in denying this claim.

Ex. 54, ECF No. 12-19 at 23.  The Supreme Court of Nevada's rejection of Stiegler's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

To prevail on his ineffective-assistance-of-appellate-counsel claim, Stiegler must show his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, he "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  Effective appellate advocacy requires weeding out weaker issues with less likelihood of success.  The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id*.

Stiegler's claims of insufficient evidence raised on direct appeal cited relevant federal law, specifically *Jackson*. *See* ECF No. 12-8 at 26, 28.  His claim of prosecutorial misconduct

related to disparaging comments towards the defense cited *McGuire v. State*, 100 Nev. 153, 158, 677 P.2d 1060, 1063-64, which analyzes a federal constitutional issue. *Id*. at 32. When relying on case citation for exhaustion purposes, a petitioner "must cite either federal or state case law that engages in a federal constitutional analysis." *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005). Such claims, therefore, were raised as claims of constitutional violations.

As for Stiegler's claim related to the flight instruction on direct appeal, the Supreme Court of Nevada reasonably concluded that Stiegler failed to demonstrate prejudice. Stiegler failed to demonstrate that there was a reasonable probability that federalizing the claim that the trial judge erred in providing a flight instruction would have led to a different outcome on appeal. Further, counsel's failure to federalize a state claim, when the state claim itself was not a winning one at the time the appeal was taken, does not constitute deficient performance under *Strickland*. Appellate counsel cannot be found to be ineffective for failure to raise an issue that lacks merit. Appellate counsel did not have a reasonable probability of success on appeal, had counsel federalized the claim, because the flight jury instruction did not infect the trial with unfairness resulting in a violation of due process. *See Estelle v. McGuire*, 502 U.S. 62, 75 (1991). As stated above, the flight jury instruction was properly supported by evidence that Stiegler left Las Vegas after he was evicted from the apartment where he hid Wilson's body, that he dyed his hair and assumed another name, and told Hegge he was wanted for murder in Las Vegas. Stiegler is therefore denied federal habeas relief on Ground 2(F)(1)(A).

**q. Ground 2(F)(1)(B) – ineffective assistance of appellate counsel re: failure to raise issues**

In Ground 2(F)(1)(B), Stiegler alleges appellate counsel rendered ineffective assistance by failing to raise issues outlined in Grounds 2A, 2B, 2C, and 2D as well as further prosecutorial misconduct. ECF No. 36 at 74-77. He asserts that appellate counsel failed to raise the following issues on direct appeal: (1) reasonable doubt instruction; (2) misconduct by Juror No. 3; (3) misconduct by Juror No. 10; (4) the state court allowing the State to amend the information to include use of a deadly weapon; and (5) prosecutorial misconduct eliciting testimony from Detective Hardy. *Id*.

1

### i.   Reasonable doubt instruction

2

The Supreme Court of Nevada held:

3
4
5
6
7

> Appellant claimed that appellate counsel was ineffective for failing to argue that the reasonable doubt instruction was improper.  Appellant failed to demonstrate that appellate counsel's performance was deficient in this regard.  This court has held that the statutory definition of reasonable doubt does not "dilute the state's burden to establish guilt beyond a reasonable doubt and does not shift the burden of proof." *Cutler v. State*, 93 Nev. 329, 337, 566 P.2d 809, 813-14 (1977); *see also Bollinger v. State*, 111 Nev. 1110, 1114-15, 901 P.2d 671, 674 (1995); *Lord v. State*, 107 Nev. 28, 38-40, 806 P.2d 548, 554-56 (1991).  The instruction in this case mirrored the statutory definition. [FN 6] NRS 175.211.  Therefore, the district court did not err in denying this claim.

8
9
10
11
12

> > [FN6] Both NRS 175.211 and the instruction given in this case state: "A reasonable doubt is one based on reason.  It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life.  If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt.  Doubt to be reasonable must be actual, not mere possibility or speculation.

13
14
15
16
17

Ex. 54, ECF No. 12-19 at 20.  The Supreme Court of Nevada's determination that Stiegler failed to demonstrate that appellate counsel was deficient was not an unreasonable application of clearly established law as determined by the United States Supreme Court.  Appellate counsel did not have a reasonable basis to challenge the reasonable doubt instruction because it mirrored the statutory definition.

18

### ii.   Misconduct by Jurors No. 3 and 10

19

The Supreme Court of Nevada held:

20
21
22
23

> Appellant claimed that appellate counsel was ineffective for failing to argue that jurors 3 and 10 committed misconduct and should have been removed from the jury panel.  Appellant failed to demonstrate that this issue would have had a reasonable possibility of success on appeal.   As discussed earlier, appellant failed to demonstrate any juror misconduct.  Therefore, the district court did not err in denying this claim.

24
25
26
27
28

Ex. 54, ECF No. 12-19 at 21.  This determination that Stiegler failed to demonstrate prejudice was not an unreasonable application of clearly established law as determined by the United States Supreme Court.  As discussed above, the Supreme Court of Nevada reasonably concluded that Juror No. 3 and No. 10's conduct did not affect the verdict and Stiegler failed to show that they were not impartial.  Accordingly, appellate counsel did not have a reasonably probability of

1    success on appeal had appellate counsel raised these issues.

2                        iii.        **Amending the information**

3        The Supreme Court of Nevada held:

4        Appellant claimed that appellate counsel was ineffective for failing to argue that
         the justice court erred in allowing the State to amend the charges against appellant
5        to add the deadly weapon enhancement.  Specifically, appellant claimed that the
         police told him that he would not get "double tapped" (referring to the deadly
6        weapon enhancement) because he used a pipe.  Appellant claimed that this
         statement induced him into confessing to the police.  Because he was induced by
7        this promise, the State should not have been allowed to amend the charges to
         include the enhancement.

8
         Appellant failed to demonstrate that this claim had a reasonable possibility of
9        success on appeal.  A prosecutor has immense discretion in determining what
         charges to bring against a defendant. *Salaiscooper v. Dist. Ct.*, 117 Nev. 892, 902-
10       03, 34 P.3d 509, 516 (2001).  In this case, the State determined that appellant could
         be charged with murder with the use of a deadly weapon because under the
11       inherently dangerous weapon test, a pipe may meet the definition of a deadly
         weapon.  Under the circumstances in which it was used in this case, the metal pipe
12       was readily capable of causing substantial bodily injury or death. *See* 2007 Nev.
         Stat., ch. 525, § 13, p. 3188-89.  Further, and most importantly, the conversation
13       regarding "double tapping" came at the end of appellant's confession, well after he
         informed the police that a pipe had been used to hit the victim.  While a promise
14       from law enforcement that tricks a defendant into confessing may render the
         confession involuntary, in this case, appellant failed to demonstrate that his
15       confession was the product of trickery. *See Passama v. State*, 103 Nev. 212, 213,
         735 P.2d 321, 322 (1987).  Because the promise came at the end of the conversation
16       with police, after appellant confessed, the promise could not have been an
         inducement to confess.  Therefore, the district court did not err in denying this
17       claim.

18   Ex. 54, ECF No. 12-19 at 21-22.  As noted by the Supreme Court of Nevada, the police's

19   promise was not an inducement to confess because it was made at the end of the conversation.

20   In addition, after Stiegler was arrested by Agent Robel on November 8, 2002, he confessed to

21   Agent Robel that he hit Wilson with a metal rod.  ECF No. 11-37 at 23-27.  This conversation

22   occurred prior to Stiegler's confession to Detective Hardy on November 20, 2002, wherein the

23   parties discussed "double tapping." *Id*. at 22.  Accordingly, appellate counsel did not have a

24   reasonable basis to set forth such claim on direct appeal and did not have a reasonable possibility

25   of success on appeal.  The Supreme Court of Nevada's determination that Stiegler failed to

26   demonstrate that appellate counsel was ineffective was not an unreasonable application of clearly

27   established law as determined by the United States Supreme Court.

28

                                             35

iv.     **Prosecutorial misconduct re: Detective Hardy's testimony**

The Supreme Court of Nevada held:

> Appellant claimed that appellate counsel was ineffective for failing to argue that the State committed misconduct when it asked Detective Hardy whether he believed appellant's self-defense claim.

> Appellant failed to demonstrate that this claim had a reasonable possibility of success on appeal.  Because trial counsel did not object to the question, appellant's claim was subject to plain error analysis.  Plain error requires a consideration of prejudice—whether the error affected the substantial rights of the defendant. *See Calvin v. State*, 122 Nev. 1178, 1184, 147 P.3d 1097, 1101 (2006).  The evidence against appellant was sufficient to convict appellant of second-degree murder, even without considering the answer elicited from Detective Hardy.  As stated earlier, appellant confessed to two different law enforcement officers that he killed his roommate by hitting him with the pipe.  He also admitted that he tried to cover the death up by hiding the victim in the floorboards of the apartment.  Further, after the body was discovered Appellant fled Las Vegas and changed his name and hair color, evidencing a consciousness of guilt.  Therefore, the district court did not err in denying the claim.

Ex. 54, ECF No. 12-19 at 22-23.  This determination that Stiegler failed to demonstrate that appellate counsel was ineffective for failing to raise the above issue on direct appeal was not an unreasonable application of clearly established law as determined by the United States Supreme Court.  In light of the substantial evidence supporting Stiegler's conviction, including Stiegler's confession to two law enforcement officers, evidence that Stiegler fled, and evidence that Stiegler hid the body and lied about Wilson's whereabouts, Stiegler failed to demonstrate that a reasonable probability of success on direct appeal had appellate counsel argued the State committed misconduct for asking Detective Hardy's opinion regarding Stiegler's self-defense claim.  Stiegler is denied federal habeas relief on Ground 2(F)(1)(B).

### r.   Ground 3 – cumulative error

In Ground 3, Stiegler alleges he is entitled to federal habeas relief because of the cumulative effect of the errors which occurred at trial. ECF No. 36 at 78.  As discussed in my order granting in part the respondents' motion to dismiss, the state appellate court's implicit rejection of Stiegler's cumulative error claim is entitled to no less deference on federal habeas review than a fully articulated rejection of the claims. *See* ECF No. 61 at 7-8. *See also Johnson v. Williams*, 568 U.S. 289, 300–01 (2013).

/ / / /

To the extent that cumulative error may be grounds for federal habeas relief, the Ninth Circuit has announced that "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels,* 505 F.3d 922, 927 (9th Cir.2007). The Supreme Court of Nevada's rejection of Stiegler's cumulative error claim was neither contrary to nor an unreasonable application of clearly established federal law. Upon review of the state court record and the pleadings filed by the parties, Stiegler has not demonstrated that cumulative errors occurred. And even assuming errors did occur, he has not shown that such errors resulted in a trial that was fundamentally unfair. Stiegler is denied federal habeas relief on Ground 3.

## IV. Certificate of Appealability

This is a final order adverse to Stiegler. Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the procedural ruling was correct. *Id.*

Applying these standards, a certificate of appealability is unwarranted.

## V. Conclusion

I THEREFORE ORDER as follows:

1. Petitioner Gregory Stiegler's Amended Petition for Writ of Habeas Corpus (ECF No. 36) is DENIED.

2. A certificate of appealability is DENIED.

/ / / /

3.  The Clerk of the Court is directed to substitute Tim Garrett for respondent Neven, enter

judgment accordingly, and close this case.

Dated: April 30, 2022

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE